IDA MIDGARDEN, Appellant, v. CITY OF GRAND FORKS,
a municipal corporation, and N. B. KNAPP, Respondents.

(54 NW2d 659)

Opinion filed August 14, 1952

*Day, Lundberg, Stokes, Vaaler & Gillig,* for appellant.
*Harold D. Shaft,* for respondents.

SATHRE, J.   This is an action brought by the plaintiff to
restrain and enjoin the defendants, the City of Grand Forks, and
N. B. Knapp, building inspector of the City of Grand Forks
from enforcing City Zoning Ordinance No. 457 as against the

use as a trailer park of plaintiff's real property described in the Complaint.

The allegations of the Complaint so far as material to a determination of the issues presented are as follows:

That the Defendant, City of Grand Forks, is a municipal corporation organized and existing under and by virtue of the laws of the State of North Dakota.

That N. B. Knapp is the building inspector of the City of Grand Forks.

That the Plaintiff is the owner of Lots Thirteen (13) Fourteen (14) Fifteen (15) Sixteen (16) Seventeen (17) Eighteen (18) and Nineteen (19) Block Fourteen (14) Riverside Park Addition.

That said property is located on the northerly outskirts of the City of Grand Forks and is situate along the Red River at a point below the bank of the Red River and is property which is flooded at all times in the spring when the Red River increases to the extent of overflowing its narrower channel; that said premises have at all times been occupied by the Plaintiff and Plaintiff's predecessors in interest as a tourist park, with the exception of one building which has been used for living quarters; that said premises are unfit for residence purposes.

That in the year 1928, the City of Grand Forks enacted a zoning ordinance No. 457, designating the above described premises as a residential area.

That the above described property owned by the Plaintiff is licensed by the State of North Dakota, as a tourist camp and is ideally situated for the operation of a tourist camp and trailer park in the City of Grand Forks, in view of its location on the outer edge of the City of Grand Forks, not in near proximity to any residences or business district, away from the hazard of traffic, in a shady location and near a city park. Further that the location and elevation is such that the only use that can be made of the property is for the parking of vehicles which can be moved in time of flood as it is impossible to build permanent buildings because of depreciation and deterioration by flood conditions and the expense in connection therewith.

That in 1949 the City of Grand Forks enacted Ordinance No.

728 providing for the establishment and creation of trailer parks, and pursuant thereto, the plaintiff made application to the City of Grand Forks building inspector and the city council for a trailer park permit on or about the 1st day of November, 1950. That the application of the plaintiff was denied on the grounds that said property was located in a residential zone, and its location objected to by residents of the vicinity.

That pursuant to the aforementioned ordinances and other ordinances of the City of Grand Forks, the City has interfered with the operation of the place of business by the plaintiff; has caused notice to be served on people camping on the plaintiff's premises that unless they remove they will be arrested; has caused the plaintiff to be arrested for violation of the aforementioned Trailer Park Ordinance and has sent agents, officers and employees of the City on the plaintiff's premises harassing plaintiff's guests, the plaintiff and her employees. ·

The complaint further alleges that said Ordinance No. 457 establishing plaintiff's premises as part of a residential zone of the city is void and invalid in so far as it affects plaintiff's property, that it is not a reasonable exercise of the powers of the city, that it is an attempt by the city to deprive the plaintiff of her property without due process of law in refusing to permit plaintiff to use the said premises for purposes for which they are suited, and that plaintiff is without an adequate remedy at law.·

Plaintiff then demands judgment that said Ordinance No. 457 be declared void insofar as it affects plaintiff's premises and that the defendant City of Grand Forks, its officers and agents, be restrained from interfering with the plaintiff's use and possession of said premises, and that they be restrained from commencing any lawsuit against the plaintiff for the purpose of enforcing said ordinance.

The defendants demurred to the complaint upon the grounds that it did not state a cause of action against the defendants or either of them. The trial court sustained the demurrer, and the case is here on appeal from the order sustaining the demurrer.

The specification of error assigned is that the trial court erred

in sustaining defendant's demurrer to the complaint. No question has been raised as to the propriety or the form of the action and the remedy of injunction.

The question for determination is therefore whether the complaint, liberally construed, states a cause of action.

A demurrer admits all facts that are well pleaded in the complaint and all intendments and inferences that may fairly and reasonably be drawn therefrom. Ginakes v. Johnson, 75 ND 164, 25 NW2d 368; Gilbertson v. Volden, 71 ND 192, 299 NW 250; Mutual L. Ins. Co. v. State, 71 ND 78, 298 NW 773, 138 ALR 1115.

"Legal conclusions or inferences of fact which are not presumed or which may not be reasonably or necessarily presumed from the facts alleged, are not admitted by demurrer." Torgerson v. Minneapolis St. Paul & S. S. M. Ry. Co. 49 ND 1096, 194 NW 741; 41 Am Jur 461. Sec 243.

The statutes of this State, Chapters 40–47, NDRC 1943, permit the zoning of property in the cities of the State. Section 40–4701 provides:

"40–4701. For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing body of any city may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, and density of industry, residence, or other purposes. Such regulations may provide that a board of adjustment may determine and vary the application of the regulations in harmony with their general purpose and intent and in accordance with general or specific rules therein contained."

Section 40–4702 provides:

"The governing body may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purpose of this chapter, and may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land within such districts. All regulations shall be uniform for each class or kind of buildings

·throughout each district, but the regulations in one district may differ from those in other districts."

Section 40–4703 provides:

"The regulations provided for in this chapter shall be made in accordance with a comprehensive plan and shall be designated ·to:

1. Lessen congestion in the streets;
2. Secure safety from fire, panic, and other dangers;
3. Promote health and the general welfare;
4. Provide adequate light and air;
5. Prevent the over-crowding of land;
6. Avoid undue concentration of population; and
7. Facilitate adequate provisions for transportation, water, sewage, schools, parks and other public requirements.

The regulations shall be made with reasonable consideration as to the character of each district and its peculiar suitability for particular uses with a view of conserving the value of buildings and encouraging the most appropriate use of land throughout the city."

Plaintiff does not challenge the method of procedure of the City Commission in enacting ordinance No. 457, but contends ·that it exceeded its powers under said ordinance in including her property within a residential area, thereby prohibiting the use thereof for purposes for which it is suited and rendering it worthless.

The allegations in the ·complaint upon which plaintiff relies as stating a cause of action are that her property is situated along the Red River at a point below its bank and that in the spring when the river overflows its bank her property is flooded and made unfit for residential purposes; that said property has at all times been occupied by plaintiff and her predecessors in interest as a tourist park with the exception of one building that has been used as living quarters; that the establishing of her property as a part of a residential district renders it worthless and deprives her thereof without due process of law. There are however no allegations in the complaint of any specific instances of flooding, nor how recently or how frequently or to

what extent the property has been flooded. The complaint alleges that the property involved has at all times been occupied by plaintiff and her predecessors in interest as a tourist camp and licensed as such by the State of North Dakota; but there is no allegation that such use of the property has in any manner been interfered with by the defendants. The main grievance of the plaintiff under the allegations of the complaint is that Ordinance No. 457 prevents her from enlarging the use of her property by the additional use as a trailer camp.

Trailer camps or trailer parks have come to be known as limited areas within city limits where a large number of people live in portable trailers for longer or shorter periods of time, and some times even for years. By reason of undue concentration of population, lack of proper facilities for removal of rubbish, disposal of waste and sewage they may create unsanitary conditions and endanger the health and welfare of the community. Because of these conditions trailer camps or trailer parks have become subject to municipal regulations throughout the United States.

Under the general rule applicable to zoning ordinances the plaintiff is permitted to use her property for the non-conforming use as a tourist camp because it was used as such prior to the enactment of Ordinance No. 457. However, plaintiff is not restricted to such use alone. Under the provisions of Ordinance No. 457, set out in the Complaint, the lands within the zone in which plaintiff's property is situated may be used for dwellings, two-family dwellings, churches, schools, parks, play ground, truck · gardening, nurseries and greenhouses, golf courses, accessory buildings, and uses customarily incident to any of the buildings and uses enumerated.

In enacting zoning ordinances the governing body of a city is exercising a legislative function, and unless such ordinances are clearly arbitrary and unreasonable they will be upheld by the courts. We quote the following statement from the opinion in the case of State of Minnesota ex rel. Berry v. Houghton, 164 Minn 146, 204 NW 569, 54 ALR 1012:

"Zoning statutes are becoming common. The police power, in its nature indefinable, and quickly responsive, in the interest

of common welfare, to changing conditions, authorizes various restrictions upon the use of private property as social and economic changes come. A restriction, which years ago would have been intolerable, and would have been thought an unconstitutional restriction of the owner's use of his property, is accepted now without a thought that it invades a private right. As social relations become more complex, restrictions on individual rights become more common. With the crowding of population in the cities, there is an active insistence upon the establishment of residential districts from which annoying occupations, and buildings undesirable to the community are excluded. . . .

Finally, the exercise of the police power is legislative. Its policy is not for the courts. Only when its exercise unconstitutionally affects personal or property rights do the courts take cognizance; and it is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate. Central Lumber Co. v. South Dakota, 226 US 157, 57 L ed 164, 33 S Ct 66; Otis v. Parker, 187 US 606, 47 L ed 323, 23 S Ct Rep 168; Patsone v. Pennsylvania, 232 US 138, 58 L ed 539, 34 S Ct Rep 281; State v. Fairmont Creamery Co. 162 Minn 146, 42 ALR 548, 202 NW 714."

And in the case of Lockard v. City of Los Angeles, 33 Cal2d 453, 202 P2d 38, 7 ALR2d 990, the Supreme Court of California said:

"In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government —the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. The duty to uphold the legislative power is as much the duty of appellate courts as it is of trial courts, and under the doctrine of separation of powers neither the trial nor appellate courts are authorized to 'review' legislative determinations. The only function of the courts is to determine whether

the exercise of legislative power has exceeded constitutional limitations. As applied to the case at hand, the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed. Acker v. Baldwin, 18 Cal2d 341, 344, 115 P2d 455; Sunny Slope Water Co. v. City of Pasadena, 1 Cal2d 87, 94, 33 P2d 672; Zahn v. Board of Public Works, 274 US 325, 326, 47 S Ct 594, 71 L ed 1074."

We quote from syllabus in Zahn v. Board of Public Works, supra:

"Where the question whether the determination of a city council that a certain district of the city shall be included within a particular classification of a comprehensive zoning plan was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable, the court will not substitute its judgment for that of the legislative body, and the conclusion of the latter will not be disturbed."

In the syllabus of the case of Webber v. City of Scottsbluff, 141 Neb 363, 3 NW2d 636, the rule is stated as follows:

"Municipal corporations are prima facie the judges of the necessity and reasonableness of ordinances, and a legal presumption obtains in their favor unless the contrary appears on the face of the ordinance or is established by clear and unequivocal evidence."

The allegations of the complaint in the instant case as to injury to plaintiff because of the designation of her property as a residential area and prohibiting its use as a trailer camp are general in character, and set forth no specific facts from which it may be reasonably inferred that plaintiff will suffer irreparable injury.

The general rule of construction of zoning ordinances is stated as follows, in 58 Am Jur Section 16, page 949:

"Like all legislative enactments, a zoning law is regarded as presumptively valid, and the burden is upon one assailing it to overcome the presumption. Every intendment is to be indulged by the court in favor of the validity of the measure, which will

not be declared invalid unless there is a plain violation of the constitutional rights, or a clear imcompatibility between the legislative act and the Constitution. Doubtful cases are decided in favor of the validity of the zoning law. It is also a general rule that where the language of a zoning statute or ordinance is reasonably susceptible of different meanings, the courts will lean to that construction which is consistent with its validity."

In the case of Miller v. Public Works, 195 Cal 477, 234 Pac 381, 38 ALR 1479, the Supreme Court of California held:

"A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. Mehlos v. Milwaukee, 156 Wis 591, 51 LRA NS 1009, 146 NW 882, Ann Cas 1915C 1102; State ex rel. Carter v. Harper, supra. Every intendment is to be indulged by the courts in favor of the validity of its exercise and, unless the measure is clearly oppressive, it will be deemed to be within the purview of that power. It is only when it is palpable that the measure in controversy has no real or substantial relation to the public health, safety, morals, or general welfare, that it will be nullified by the courts. The courts may differ with the legislature as to the wisdom and propriety of a particular enactment as a means of accomplishing a particular end, but as long as there are considerations of public health, safety, morals, or general welfare which the legislative body may have had in mind, which could have justified the regulation, it must be assumed by the court that the legislative body had those considerations in mind, and that those considerations did justify the regulations."

In view of the limitations which zoning ordinances may place upon the use of land within designated areas and under the principles of law and rules of construction applicable in determining their validity, the complaint under the most favorable construction, does not allege facts sufficient to state a cause of action.

The order of the District Court sustaining the demurrer is sustained.

MORRIS, C.J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.