A. R. MINCH, Plaintiff and Appellant,

v.

CITY OF FARGO, Defendant and Appellee.

Civ. No. 9779.

Supreme Court of North Dakota.

Oct. 6, 1980.

786

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for plaintiff and appellant; argued by Ronald H. McLean.

Solberg, Stewart & Boulger, Fargo, for defendant and appellee; argued by Wayne O. Solberg, Fargo.

PEDERSON, Justice.

This is an attempted appeal from a summary judgment which disposed of some of the claims for relief, but where no express determination was made that there is no just reason for delay and no express direction for entry of judgment as contemplated by Rule 54(b), NDRCivP. Because the decision is interlocutory, even though in the form of a final judgment, we dismiss the appeal.

Minch owns property in Fargo in an area which, prior to 1976, was zoned "R–3 Multiple Dwelling District." In 1976, after Minch had commenced with physical improvements in accord with the R–3 designation, Fargo rezoned the area "R–1 One and Two Family Dwelling District." Minch sued, seeking alternatively: (1) $100,000 damages for a taking or damaging of property without compensation; (2) a declaration that a valid nonconforming use existed and $20,000 damages for increased costs and loss of profits; or (3) a permanent injunction preventing enforcement of the ordinance because it was unconstitutional, and $20,000 damages for increased costs and loss of profits.

Fargo's answer denied the pertinent allegations and counterclaimed, asking for dismissal and for an order restraining Minch from certain commercial uses of the property, and requiring that he correct specified structural defects.

Both sides moved for summary judgment and, thereafter, the trial court dismissed all of Minch's claims for damage–in effect leaving for trial the issues:

(1) Was there a taking or damaging in the constitutional sense?

(2) Did a nonconforming use exist?

(3) Is the change in the ordinance unconstitutional?

(4) Should Minch be restrained from certain commercial uses of the property? and

(5) Should Minch be required to correct structural defects?

There is no claim that controverted facts make a partial summary judgment inappropriate. Despite the fact that no 54(b) order accompanied the dismissal of the damage claims, review of that ruling is now sought in this court.

■ "In furtherance of convenience or to avoid prejudice," courts may order separate trials and separate issues, and may direct a separate "final judgment" in accordance with Rule 54(b). See Rules 21 and 42(b), NDRCivP.

Rule 54(b), NDRCivP, states:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross–claim, or third·party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Since the adoption of Rule 54(b) in 1957, the decisions of this court have not left a clear or consistent path for practitioners to follow.

After a full analysis of the rule and its purpose, authored by now Chief Justice Erickstad, this court held:

"A judgment which adjudicates less than all claims is not appealable unless an order has been rendered under Rule 54(b), N.D.R.Civ.P." *Kack v. Kack*, 142 N.W.2d 754, 755 (N.D.1966), Syllabus 1.

Relying upon cases interpreting the identical federal rule, Justice Erickstad pointed out that, although it was not good practice, "at least in the relatively earlier stage of the general enforcement of Rule 54(b)," the court would nevertheless hear the appeal rather than remand and require parties to start anew. *Kack v. Kack, supra*, 142 N.W.2d at 761.

During the period immediately following *Kack*, where Rule 54(b) was considered, this court consistently dismissed appeals where the appropriate Rule 54(b) order was missing. *Perdue v. Knudson*, 154 N.W.2d 908 (N.D.1967), dismissal; *Perdue v. Knudson*, 179 N.W.2d 416 (N.D.1970), on the merits; *Berg v. Kremers*, 154 N.W.2d 911 (N.D. 1967), dismissal; *Berg v. Kremers*, 181 N.W.2d 730 (N.D.1970), and *Berg v. Kremers*, 193 N.W.2d 129 (N.D.1972), on the merits; *Mitzel v. Schatz*, 167 N.W.2d 519 (N.D. 1968), dismissal; and *Mitzel v. Schatz*, 175 N.W.2d 659 (N.D.1970), on the merits.

*Berg v. Kremers, supra*, 154 N.W.2d at 912, stating that the rule discourages piecemeal disposal of multiple–claim litigation, held that in the absence of a 54(b) order, "this court has no jurisdiction to hear such appeal."

*Giese v. Engelhardt*, 175 N.W.2d 578 (N.D.1970), and *Schollmeyer v. Saxowsky*, 211 N.W.2d 377 (N.D.1973), were partial disposition cases where appropriate Rule 54(b) orders had been entered.

Consistency is more difficult to recognize in subsequent cases, starting with *Luithle v. Taverna*, 214 N.W.2d 117 (N.D.1974), where this court concluded that when the judgment disposed of all the claims in which the plaintiff-appellant had an interest, no Rule 54(b) order was necessary even though a cross-claim amongst defendants–appellees remained undecided.

*Rogelstad v. Farmers Union Grain Term. Ass'n*, 224 N.W.2d 544, 548 (N.D.1974), said:

"We have considered this matter, and believe that Rule 54 applies to decisions which finally dispose of causes of action, as opposed to matters collateral to the merits of a case, such as the determination that an action may not be maintained as a class action. See 6 Moore's Federal Practice, § 54.31 (2d Ed. 1974)."

*Hodny v. Hoyt*, 224 N.W.2d 826 (N.D. 1974), dismissed for want of a 54(b) order, was back on the merits after the final judgment had been entered. *Hodny v. Hoyt*, 243 N.W.2d 350 (N.D.1976).

In *Fisher v. Golden Valley Bd. of County Com'rs.*, 226 N.W.2d 636, 642 (N.D.1975), we did not dismiss an appeal which would have been required by Rule 54(b) where there was a stipulation that neither party objected to the absence of the 54(b) order, but we said:

". . . we do not mean to lessen the importance of a Rule 54(b) order, nor do we mean to indicate that we will hereafter necessarily recognize this case as precedent for a departure from Rule 54(b) of the North Dakota Rules of Civil Procedure."

In *Melland Firestone, Inc. v. Streich*, 226 N.W.2d 141 (N.D.1975), we dismissed an appeal from a judgment which did not dispose of a counterclaim because there was no 54(b) order. About the same time, in *Hubbard v. Libi*, 229 N.W.2d 82 (N.D.1975), we used *Fisher v. Golden Valley Bd. of County Com'rs, supra*, as a precedent for departing from Rule 54(b) and reaching the merits without a 54(b) order because the parties stipulated that we should. In reaching the merits on an appeal from a partial judgment in *Danks v. Holland*, 246 N.W.2d 86 (N.D.1976), we merely pointed out, in a footnote, the absence of a Rule 54(b) order.

Again, in *Zuraff v. Empire Fire & Marine Ins. Co.*, 252 N.W.2d 302, 304 (N.D.1977), where counsel, after oral argument, stipulated that noncompliance with Rule 54(b) be waived, we said:

"We need not, therefore, determine the issue of appealability ..."

In *Crandall v. N.D. High School Activities Ass'n*, 261 N.W.2d 921, 923 (N.D.1978), we relied on a stipulation and "confirmation by the court that the order was final" as obvious efforts to satisfy Rule 54(b).

*Boone v. Estate of Nelson*, 264 N.W.2d 881, 884 (N.D.1978), held:

"In the instant case, the probate court did not make an express determination, pursuant to Rule 54(b), N.D.R.Civ.P., that there was no just reason for delay. We conclude that the summary judgment of the probate court was not a final judgment and was not appealable."

In *City of Williston v. Beede*, 289 N.W.2d 235, 238 (N.D.1980), we granted a petition that we exercise our original jurisdiction in order to "prevent unwarranted, complicated and bifurcated appeals to this court which do not promote the ends of justice." Justice Sand, in authoring that opinion, noted the significance of Rule 54(b) to the question.

We have not searched for decisions where no mention was made of Rule 54(b) but where an appeal from a judgment on a portion of a complaint has been decided on the merits. We know there are some, e.g., *Morgel v. Winger*, 290 N.W.2d 266 (N.D. 1980). This court can hardly be faulted for not deciding issues that are not raised by the parties.

■■■ However checkered the history of Rule 54(b) may appear, from a declaration that compliance is jurisdictional, *Berg v. Kremers*, 154 N.W.2d 911 (N.D.1967), to ignoring the rule completely, *Morgel v. Winger, supra*, it does have a legitimate role in jurisprudence. The district court has not made the requisite determination that there

is no just reason for delay. The partial judgment that was entered is interlocutory and the question of damages, which appears to be finally determined, may have to again be considered by the trial court, depending upon the conclusion reached on the other issues. The rule does not recognize any type of stipulation to nullify its operation.[1] Furthermore, the facts of this case do not compel us to ignore the rule and assume jurisdiction. Even were we able to reach the merits, it appears that certain findings would have to be made by a lower court before we could review even the damages issue. Therefore the case must be remanded to the district court but, in the interest of judicial economy, we will attempt to make clear our position concerning remedies for grievances arising from municipal zoning actions.

■■■ While public officials in their discretionary acts and decisions have immunity from claims founded in tort, *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), § 14 of the North Dakota Constitution guarantees that a person will be recompensed for any taking or damaging of his property by the public. Section 14 authorizes a claim for inverse condemnation, *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808, 817 (N.D.1942), which is not barred by the immunity discussed in *Kitto*. Such a claim proceeds from a constitutional right and must be distinguished from claims grounded in tort theory only. See, *Kinnischtzke v. City of Glen Ullin*, 79 N.D. 495, 57 N.W.2d 588 (1953); *Armstrong v. Ross Tp.*, 82 Mich.App. 77, 266 N.W.2d 674, 676 (1978).

■■■ If an action for inverse condemnation lies for a taking or damaging under § 14, it still must be determined what is necessary for a zoning ordinance to effect a "taking or damaging." The scope of § 14 is clearly broader than that of the federal constitution. In this state a public entity can cause compensable damage to property without fully taking it. We said in *King v.*

---

1. The parties, through their counsel, orally stipulated before this court that the absence of a Rule 54(b) order was waived. For reasons stated herein, we cannot give full effect to that stipulation.

*Stark County*, 67 N.D. 260, 271 N.W. 771, 774 (N.D.1937):

> "It is not necessary that there be a direct injury to the property itself in order to create this liability [for damages]. It is sufficient to warrant a recovery if there be 'some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.' [Cites omitted.] And the diminution in value of property resulting from the acts complained of is special and peculiar within the meaning of the rule."

A remedy in inverse condemnation then does not require a taking or total destruction of the property.

 A land use regulation would not result in an obligation to pay damages if it can legitimately be designated as an exercise of police power.

> "Statutory enactments and municipal ordinances having for their purpose the protection of the public health, safety, morals and public welfare are founded upon the police power inherent in the state." *Soderfelt v. City of Drayton*, 79 N.D. 742, 59 N.W.2d 502, 507 (1953).

Distinguishing between use of the police power and a compensable damaging may not be easy in certain cases. The general rule appears to be that compensation is due where the official act is to create a public benefit or convenience, while the police power enables noncompensable regulation to prevent disputes and violation of rights. See, Hagman, Urban Planning and Land Development Control Law, § 180 (1971). Of course, the extent of the owner's loss is inevitably a factor in any attempt to identify an act as either a damaging or a police function.

 This court has counted zoning as a manifestation of the police power. *Eck v. City of Bismarck*, 283 N.W.2d 193, 197 (N.D. 1979). A decrease in the monetary value of property as a result of a zoning action does not necessarily amount to a taking or even a damaging which would oblige the governmental entity to pay compensation. *Eck, supra*, 283 N.W.2d at 197. Only where the zoning ordinance "forbids substantially *all* use of regulated property" will a suit in inverse condemnation be appropriate. *Eck, supra*, 283 N.W.2d at 201. If the ordinance is arbitrary, discriminatory or otherwise illegal but does not effect a taking or damaging, declaratory relief must be sought. *Eck, supra*, 283 N.W.2d at 201. Thus zoning is relatively insulated from claims for damages.

 However, Minch has alleged substantial reliance on the prior zoning provision and on representations made by certain city officials before the rezoning. In *City of Fargo, Cass County v. Harwood Tp.*, 256 N.W.2d 694, 700 (N.D.1977), we said that "a landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed himself to his substantial disadvantage before the zoning change may be protected." *Harwood* was a declaratory action. Nevertheless, substantial reliance could in effect substitute for the requirement above mentioned in inverse condemnation actions that almost all use of the zoned property be forbidden. In a given instance, a trial court could well find reliance considerable enough to declare a taking or damaging.

 Thus in any case where a taking or damaging in the constitutional sense is alleged, blanket immunity for public officials is inappropriate. The court must determine whether or not, as a matter of law, there has been a taking or damaging. *Yegen v. City of Bismarck*, 291 N.W.2d 422, 424 (N.D. 1980). And in the instant case, that issue unavoidably entails an inquiry into Minch's reliance or the principle of estoppel. See the discussion of estoppel elements in *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 813 (N.D.1976).

The case is remanded to the district court for proceedings in accord with this opinion. No costs will be allowed on this appeal.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.