Marie MUNCH and Anita Roster,
Plaintiffs and Appellees,

v.

The CITY OF MOTT, North Dakota,
acting through its City
Council, Defendant,

Milton Hertz and Hertz Farms, Inc., a
North Dakota corporation, Defendants
and Appellants.

Civ. No. 9929.

Supreme Court of North Dakota.

Oct. 7, 1981.

———

Vogel Law Firm, Mandan, for plaintiffs and appellees; argued by Rauleigh D. Robinson, Mandan.

Charles E. Crane, City Atty., Mott, for defendant, City of Mott.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellants; argued by Ward M. Kirby, Dickinson.

PEDERSON, Justice.

Two basic questions presented in this case are:

(1) Is a city ordinance which confers enforcement standing upon any "affected citizen or property owner" valid?

(2) What is the role of the judiciary in reviewing legislative, executive or administrative decisions of the governing body of a municipal corporation?

In addition, we are asked to decide (a) whether or not evidence was improperly admitted, (b) whether or not the district court abused its discretion in allowing expert witness fees under the circumstances of this case, and (c) whether or not the issue of damages was improperly overlooked.

We conclude, first, that a municipal government may properly confer standing upon "any affected citizen or property owner" to aid in the enforcement of its zoning ordinances and, second, that the principle of separation of powers limits the scope of judicial review of legislative, executive, or administrative decisions by a city council. A limited review of an administrative determination does not, however, prevent a court from hearing evidence "anew" where there are inadequate records otherwise upon which to base a judicial review. This principle applies to actions to enjoin, as well as "appeals" authorized by the statute.

We further conclude that evidence was not improperly admitted and that the trial court did not abuse its discretion in awarding expert witness fees, but that the allegation of damages raised in the answer has not been disposed of by the trial court. The judgment is affirmed in part and remanded for further proceedings on the question of damages.

A comprehensive zoning ordinance was enacted by the City of Mott on July 19, 1978 (City of Mott Zoning Ordinance # 1). It provided, in part: (1) a zoning commission shall "establish the zoning affairs of the city" [§ 1.7.2(70)]; (2) "the proper City authority or any affected citizen or property owner, in addition to other remedies, may institute any appropriate action or proceedings" to enforce compliance (§ 5.2.2)[1]; (3) in industrial districts "permitted uses" and "conditional uses" are itemized and chemical fertilizer plants are "conditional uses" (§ 3.4)[2]; (4) "each new use" requires a

---

1. "5.2.2 Remedies Regarding Violations

"If any building or structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained, or if any building, structure, or land is used in violation of this chapter, the proper City authority or any affected citizen or property owner, in addition to other remedies, may institute any appropriate action or proceedings:
 a. To prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance, or use;
 b. To restrain, correct, or abate such violations;
 c. To prevent the occupancy of the building, structure or land; or
 d. To prevent any illegal act, conduct, business, or use in or about such premises.

(North Dakota Century Code, Section 40–47–12)."

2. "3.4 (I–1) Industrial Districts

"Purpose—This district and these regulations are established to provide for the best location of large or heavy commercial and industrial uses which would be incompatible with uses in other zoning districts.
"Permitted uses—
 1. Agriculture
 2. Bottling Plant
 3. Farm Equipment Sales
 4. Gasoline Station
 5. Grain and Feed Elevator or Mill
 6. Heavy Equipment Sales, Service or Repair
 7. Lumber Yard

certificate of zoning compliance by the city auditor (§ 2.2.2); (5) conditional uses shall not be detrimental to or endanger "the public health, safety, comfort and general welfare" (§ 2.6.2)[3]; (6) hearings must be held before action is taken on applications for conditional use (§ 2.6.1).[4]

An "anhydrous ammonia storage facility" is not, by name, included as either a "permitted use" or "conditional use." Anhy-

drous ammonia is a gaseous substance which is liquified by compression and is used extensively as fertilizer in modern agricultural practices.

On August 16, 1978, less than one month after the adoption of the zoning ordinance, the Mott City Council met in special session to consider Hertz's proposed plans for an anhydrous ammonia facility in Mott. The facility was to consist of a 30,000-gallon

8. Recreational Vehicle Sales
9. Trucking or Freight Terminal
10. Vocational Training Schools
11. Warehouses
12. Welding Shops
"Conditional Uses—
1. Chemical Fertilizer Plant
2. Coal Gasification Plant
3. Electrical Power Generating Plant
4. Refinery
"The following conditions shall apply to the above conditional uses:
a. A preliminary public hearing shall be conducted in the city concerning site location, needs of the plant, construction crews and employees concerning streets, housing, community facilities and community services.
b. Provide twelve copies of an environmental impact statement to the Zoning Commission for distribution to the appropriate agencies.
c. Provide evidence of approval of the State Department of Health on pollution controls.
d. Provide evidence of approval for a water permit from the State Water Commission.
e. No plant shall endanger any historical site, archeological site or cemetery.
f. The applicant shall provide any additional information the Zoning Commission deems necessary.
5. Sewage Disposal Plant
6. Solid Waste Landfill and Transfer Stations
7. Coal Excavation and Mining and Commercial Sand and Gravel Operations.
The above conditional uses shall not be allowed within the City Limits.
8. Airports
Evidence of approval by the Federal Aeronautics Administration and the North Dakota Aeronautics Commission shall be provided to the Zoning Commission.
9. Salvage and Junk Yards
The following conditions shall apply to the above uses:
a. Location shall conform to Chapter 24–16 (Establishment of Junkyards adjacent to Highways) of the North Dakota Highway Laws.
b. All salvage and/or junk yards shall be screened by plantings or solid fences.

c. No burning of salvaged material and/or junk shall be permitted.
d. The applicant shall provide any information the Zoning Commission deems necessary.
10. Fuel and Explosive Material Storage Tanks and Terminals.
The following conditions shall apply to the above uses.
a. Evidence of approval by the State Fire Marshal and/or the city fire chief shall be submitted to the Zoning Commission.
b. The applicant shall provide any information the Zoning Commission deems necessary."

3. "2.6.2 *Standards for Conditional Uses*
a. That the establishment of the conditional use will not be detrimental to or endanger the public health, safety, comfort and general welfare.
b. That the uses, values, and enjoyment of other property in the area for the purpose already permitted shall be in no manner impaired or diminished by establishment, maintenance or operation of the conditional use.
c. That the establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding property.
d. That adequate utilities, access roads, drainage and other necessary site improvements have been or are being provided.
e. That adequate measures have been taken to provide ingress and egress so designed to minimize traffic congestion on the public roads.
f. That the conditional use shall conform to all applicable provisions of the district in which it is located.
g. That the conditional use shall not conflict with the primary activities in the area nor shall impair the value of the natural resources."

4. "2.6.1 *Hearing*
The Zoning Commission shall hold a public hearing before action is taken on the application for approval of a conditional use.
Notice of said hearing shall be published in the official newspaper of the City at least one week prior to said hearing."

storage tank and a pump. Although several citizens of Mott were notified of this special session by telephone, no notice of a public hearing was published. Some residents of Mott, including Munch, did appear at the meeting.

The city council met again in special session on August 21, 1978 and approved the Hertz anhydrous ammonia facility. No notice of this special session was published. The Hertz facility was constructed shortly thereafter and has been in use since.

Approximately a year later, on August 31, 1979, Hertz applied for a building permit for an additional 30,000-gallon anhydrous ammonia tank. This second tank was to be placed alongside the first.

On the afternoon of September 6, 1979 a hose ruptured during the unloading of a tanker at the Hertz facility, causing some anhydrous ammonia to escape into the air. Several residents of Mott, including Munch, were forced to evacuate their homes.

On September 19, 1979, without having published a notice thereof, the city council met in special session and Hertz's application for a building permit for the second anhydrous ammonia tank was approved.

This lawsuit seeking injunctive relief was commenced by Munch and Roster (hereinafter called Munch) on October 4, 1979 against Hertz and the City of Mott. Relying on Section 5.2.2 of the Mott Zoning Ordinance which allows "any affected citizen" to seek the enforcement of Mott's zoning laws, Munch charged that the two Hertz building permits were granted in violation of the Mott Zoning Ordinance. Munch claimed that the anhydrous ammonia facility was a "chemical fertilizer plant," therefore falling within the "conditional use" requirements of the ordinance,

and the lack of published notice for public hearings, as required by the ordinance, invalidates the building permits.

Hertz denied the allegations, claiming that Section 5.2.2 of the Mott Zoning Ordinance authorizing enforcement action by citizens was invalid as an improper extension of statutory authorization. Hertz claimed that Section 5.2.2 granted standing to persons not contemplated by the State enabling legislation, § 40–47–12, NDCC.[5] Hertz also argued that the city council had determined the facility to be a "permitted use" and that, therefore, the building permits were properly granted.

The trial court, in a trial anew without a jury, heard evidence on the question of classification of the Hertz facility, and concluded therefrom that the anhydrous ammonia facility constituted a "conditional use" as that term is used in the Mott zoning ordinance. It further concluded that the lack of published notice, as required by the ordinance, served to invalidate the Hertz building permits. This appeal by Hertz followed. The City of Mott did not appeal nor participate as an appellee in this court.

## I.

■ Cities are creatures of statute and their powers or authorities must be derived from legislative authorization. *Roeders v. City of Washburn*, 298 N.W.2d 779, 782 (N.D.1980). Section 40–47–01, NDCC, authorizes cities to adopt zoning regulations for the purpose of promoting health, safety, morals, or the general welfare of the community. Pursuant to this authorization, the City of Mott adopted a comprehensive zoning ordinance to fit its particular needs. Section 5.2.2 of this ordinance confers standing upon "any affected citizen or property owner" to secure enforcement of

---

**5.** "40–47–12. Instituting action to restrain, correct, or abate violations.—If any building or structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained, or if any building, structure, or land is used in violation of this chapter or of any ordinance or other regulation made under the authority conferred by this chapter, the proper local authorities of the city, in addition to other remedies, may institute any appropriate action or proceeding:

1. To prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance, or use;
2. To restrain, correct, or abate such violation;
3. To prevent the occupancy of the building, structure, or land; or
4. To prevent any illegal act, conduct, business, or use in or about such premises."

the Mott zoning ordinances. The authority to institute action to restrain, correct, or abate zoning violations is governed by § 40–47–12, NDCC, which provides in part that "proper local authorities of the city, in addition to other remedies, may institute any appropriate action or proceeding." Hertz contends that conferring standing upon "any affected citizen or property owner" exceeds the City's statutory authorization. This argument is without merit. Section 40–47–12 must be read in conjunction with § 40–47–04, NDCC, which specifically allows cities to provide for the manner in which zoning regulations shall be enforced.[6] A city's zoning power is dependent on authority delegated from the State, but these powers need not always be explicitly listed in the statute. A city is given its powers by specific grant and by implication therefrom. *City of Fargo, Cass Cty. v. Harwood Tp.,* 256 N.W.2d 694, 697 (N.D.1977).

▮ It is clearly within the prerogative of the local authorities to determine the means and methods for enforcing a city's zoning ordinances as long as the city's ac-

tions remain compatible with the spirit of the State legislation. See, *Ujka v. Sturdevant,* 65 N.W.2d 292 (N.D.1954). The mere fact that § 40–47–12, NDCC, confers standing only upon "proper local authorities" does not preclude the City of Mott from allowing "affected and interested citizens" the right to secure the enforcement of its zoning ordinances. Mott's extension of the standing requirements is compatible with the stated purpose of promoting the health, safety, morals, or the general welfare of the community. The fact that Munch was forced to evacuate her home during the accident at the Hertz facility made her "an affected citizen" within the purview of the Mott Zoning Ordinance. This is not unlike the authority or standing to sue granted to any person aggrieved by violations of environmental regulations by § 32–40–06, NDCC.[7] We are not convinced that, in authorizing this suit, § 5.2.2 is invalid.

## II.

▮ The City of Mott, in exercising its legislative function pursuant to statutory

---

**6.** "40–47–04. Determining and enforcing regulations—Public hearing and notice thereof—Publication of regulations, restrictions, and boundaries. The governing body of a city which shall use zoning regulations shall provide for the manner in which the regulations and restrictions shall be established, enforced, or supplemented, and for the manner in which the boundaries of the districts shall be established and from time to time changed. A copy of each proposed regulation, restriction, or boundary shall be filed with the city auditor. No regulations, restriction, or boundary shall become effective until after a public hearing thereon at which parties in interest and citizens shall have an opportunity to be heard. Notice of said hearing shall be published once a week for two successive weeks prior to the time set for said hearing in the official newspaper of the city. Such notice shall contain the following items:

 1. The time and place of the hearing.
 2. A description of any property involved in any zoning change, by street address if streets have been platted or designated in the area affected.
 3. A description of the nature, scope, and purpose of the proposed regulation, restriction, or boundary.
 4. A statement of the times at which it will be available to the public for inspection and copying at the office of the city auditor.

"Upon establishment of any regulation, restriction, or boundary hereunder the governing body of a city shall file a certified copy thereof with the city auditor and shall cause notice of the same to be published in the official newspaper of the city. Said notice shall describe the nature, scope, and purpose of the regulation, restriction, or boundary, and shall state the times at which it will be available to the public for inspection and copying at the office of the city auditor."

**7.** "32–40–06. Who may sue—Defendants—Exception to recovery of damages.—Any state agency, with the approval of the attorney general; any person; or any county, city, township, or other political subdivision, aggrieved by the violation of any environmental statute, rule, or regulation of this state may bring an action in the appropriate district court, either to enforce such statute, rule, or regulation, or to recover any damages that have occurred as a result of the violation, or for both such enforcement and damages. Such action may be brought against any person, state agency, or county, city, township, or other political subdivision allegedly engaged in such violation. However, no damages may be recovered against any state agency, county, city, township, or other political subdivision, except as otherwise provided by law."

authorization, adopted a comprehensive zoning ordinance. This ordinance is presumed valid unless clearly shown to be arbitrary or unreasonable. *Midgarden v. City of Grand Forks*, 79 N.D. 18, 54 N.W.2d 659 (1952). Although the enactment of a zoning ordinance is a legislative function, interpretations thereof are quasi-judicial acts by the city council. The courts shall not substitute their judgment for that of the council, but may review for arbitrariness. *Cowan v. Stroup*, 284 N.W.2d 447 (N.D.1979). In the determination of this case, the district court heard live testimony, considered evidence not heard by the city council, and necessarily made its decision upon that evidence. Hertz claims that this does not comport with the proper role of the judiciary when reviewing actions of a co-equal branch of government.

██ Even though there be no record available of the proceedings before the city council, the decisions of the council are subject to judicial review. A trial anew is necessary. *Shaw v. Burleigh County*, 286 N.W.2d 792 (N.D.1979). This does not mean that the court may substitute its judgment for that of the council. We said in *Shaw, supra*, 286 N.W.2d at 796, "that evidence [from a trial anew] must be viewed in light of the findings, if any, the decision, and the reasons given therefor . . . " by the commission. In the case of *Soo Line Railroad v. City of Wilton*, 172 N.W.2d 74 (N.D.1969), in which a record was available, this court said that the role of the court is limited to determining,

First, whether or not the city council was within its jurisdiction;

Second, whether or not it was mistaken as to the applicable law;

Third, whether or not it acted arbitrarily, oppressively, or unreasonably; and

Fourth, whether or not there was substantial evidence to support or justify its determination.

In *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.*, 171 N.W.2d 104, 112 (N.D.1969), we quoted from 2 Am.Jur.2d Administrative Law, § 613, as follows:

"Generally, the legislature is precluded from imposing nonjudicial powers upon the courts, and the doctrine of the separation of powers prohibits the legislature from providing for a review which is too intensive—a review which in fact would constitute the delegation of nonjudicial functions to the judiciary. Upon review of action of an administrative agency, the court is confined to determination of judicial as distinguished from administrative questions, and the very nature of the judicial function itself limits judicial review of action administrative or legislative in nature."

██ We do not mean to imply, by citing cases involving appeals governed by the Administrative Agencies Practice Act (Ch. 28–32, NDCC), or otherwise, that procedures in district court cannot differ when there is an appeal authorized by the legislature and when preventive relief by injunction is being sought (Ch. 32–06, NDCC), or there is a special proceeding seeking a writ (Ch. 32–32, NDCC). The principle of separation of powers, however, applies whenever the judicial branch reviews actions of the legislative or executive branch.

██ The action of the City of Mott in granting building permits to Hertz does not, in itself, indicate a finding that an anhydrous ammonia storage facility is not a "conditional use" under the terms of the Mott zoning ordinance. The evidence before the district court primarily supports a conclusion that the city officials were confused as to the requirements of the ordinance. The record made by the City does not support the City's determination. We cannot conclude that the trial court made a review that was "too intensive," or encroached upon the legislative or executive powers of the City of Mott in declaring the building permits invalid under the circumstances. The judgment is accordingly affirmed. This does not prevent Hertz from reapplying, or the City of Mott from granting a "conditional use" permit within the terms of the ordinance.

### (a)

Hertz objected to much of the evidence that was received. In *Schuh v. Allery*, 210

N.W.2d 96, 100 (N.D.1973), and many times since, we have said:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

(b)

In all actions and special proceedings, the prevailing party has a statutory right to expert witness fees. Section 28–26–06, NDCC. The reasonable amount of such fees is to be determined at the discretion of the court. Section 28–26–06(5), NDCC. The ruling of the court in allowing certain costs will not be disturbed unless the facts show an abuse of the court's discretion. *Peterson v. Hart*, 278 N.W.2d 133 (N.D.1979); *Whitney v. Akin*, 19 N.D. 638, 125 N.W. 470 (1910). There has been no such showing in this case.

(c)

The issue of damages sustained by Hertz as alleged in the Answer has not been addressed by the trial court. The matter is remanded for such further proceedings as may be necessary thereon. See, however, *Minch v. City of Fargo*, 297 N.W.2d 785 (N.D.1980), and cases cited therein. In all other respects, the judgment is affirmed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VANDE WALLE, Justice, dissenting.

Although I agree that a city ordinance which confers enforcement standing upon any affected citizen or property owner is valid, I cannot agree with the entire majority opinion.

I disagree with that portion of the majority opinion which concludes that any anhydrous ammonia storage facility is a conditional use rather than a permitted use under the Mott ordinance. If a facility such as this is a chemical fertilizer *plant*, then what is the plant called that actually makes the fertilizer, as opposed to merely storing and dispensing it? The placement in the ordinance of chemical fertilizer plants as conditional uses along with coal gasification plants, electrical power generating plants, and refineries leads me to a conclusion that the governing body enacting the ordinance contemplated something more than the storage and dispensing of a chemical fertilizer to constitute a chemical fertilizer plant.

Concededly the ordinance is ambiguous; but it is in just such an instance that the courts should defer to the judgment of the body that drafted the ordinance rather than substituting their judgment for that of the enacting body. See, e. g., *Walker v. Weilenman*, 143 N.W.2d 689 (N.D.1966).

I believe the city governing body was within its authority in considering the anhydrous ammonia facility a permitted use under the ordinance. The procedure followed by the City in issuing its permit was not, therefore, improper under the terms of the ordinance. I would reverse the judgment of the district court.