A.R. MINCH, Plaintiff and Appellant,

v.

CITY OF FARGO, Defendant
and Appellee.

Civ. No. 10267.

Supreme Court of North Dakota.

March 30, 1983.

Tenneson, Serkland, Lundberg, Erickson
& Marcil, Fargo, for plaintiff and appellant;
argued by Ronald H. McLean, Fargo.

Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellee; argued by
Wayne O. Solberg, Fargo.

PEDERSON, Justice.

The City of Fargo rezoned an area in the
city which included a small lot owned by
Minch. Minch claimed that he had plans
for, and had made, investments in some
improvements on his lot that are prohibited
by the new zoning ordinance. His suit
against Fargo is described more fully in
*Minch v. City of Fargo,* 297 N.W.2d 785
(N.D.1980). That was an appeal from a
clearly interlocutory determination and, because no Rule 54(b), NDRCivP [1] order had

---

1. Rule 54(b), NDRCivP, in effect provides that
when fewer than all of the claims or all of the

rights and liabilities between the parties are
adjudicated by any order or other form of deci-

been entered, we remanded for further proceedings which have now occurred.

Minch sought, in the alternative: (1) a declaration that the zoning ordinance was unconstitutional; (2) compensation for the "taking or damaging" of his property (inverse condemnation); or (3) a declaration that he had established a nonconforming use. He demanded a jury trial on the second and third alternatives.

A jury trial was had; however, when all testimony was in, the trial court determined that there was a preliminary question for the court. The court made findings of fact, conclusions of law, and order for judgment of dismissal with prejudice and on the merits. We affirm the judgment.

Before we reach the issues discussed by the parties, it might be helpful to analyze some of the procedural confusion encountered in zoning and inverse condemnation law. The Institute on Planning, Zoning and Eminent Domain, Southwestern Legal Foundation, Dallas, has periodically addressed these and other related subjects. Particularly interesting articles in some of their annual publications are: Arnebergh, *Recent Developments in the Law of Inverse Condemnation* (1974); Huxtable, *Inverse Condemnation—Its Structures, Advantages, and Pitfalls* (1977); Sackman, *Factors in Inverse Condemnation* (1978); Kanner, *Inverse Condemnation Remedies In An Era Of Uncertainty* (1980); and Sackman, *When Is A "Taking" Not A "Taking"?* (1982).

In the 1980 publication, Professor Kanner of Loyola Law School in Los Angeles wrote about "a veritable torrent of legal commentaries vying with one another in pointing out the glaring deficiencies in the doctrinal bases of the existing law .... " Kanner quotes from one of those commentaries as follows:

"Judicial efforts to chart a usable test for determining when police power meas-
ures impose constitutionally compensable losses have, on the whole, been notably unsuccessful. With some exceptions, the decisional law is largely characterized by confusing and incompatible results, often explained in conclusionary terminology, circular reasoning, and empty rhetoric. Even the modicum of predictability which might otherwise inhere in the pattern of judicial precedents is impaired by the frequently reiterated judicial declaration that each case must be decided on its own facts. In part, this state of affairs may be attributed to the amorphous nature of the legal dilemma posed by the need to balance the interest in social control against the interest in distributive justice. But, in part at least, it also reflects the absence of a generally accepted theoretical rationale for circumscribing the boundaries of the police power, as well as the persistent reluctance of legislatures to provide statutory guidelines or criteria for the resolution of the issues thus posed." Van Alstyne, *Taking or Damaging by Police Power: The Search for Inverse Condemnation Criteria,* 44 So.Cal. L.Rev. 1 (1970).

In *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 123, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), Justice Brennan, for the majority, with Justice Rehnquist and others dissenting, reviewed "the factors that have shaped the jurisprudence of the Fifth Amendment injunction 'nor shall private property be taken for public use, without just compensation.' " Subsequently, in *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979), Justice Rehnquist, for the majority, with Justice Brennan and others dissenting, quoted approvingly from *Penn Central* that the United States Supreme Court has generally "been unable to develop any 'set formula' for determining when 'justice and

sion, it is presumed that the trial judge intends to retain jurisdiction so that revisions of that order can be considered at any time up to the entry of the final judgment. These orders are accordingly interlocutory, and appeal therefrom is neither permitted nor required. That presumption is overcome when the trial court makes an express determination that there is no reason for delay and express direction that final judgment be entered. See also Rules 20 and 21, NDRCivP, relating to severing parties or issues and ordering separate trials.

fairness' require that economic injuries caused by public action be compensated . . . ."

Clear guidelines are similarly absent from the variety of precedents pronounced by this court. Cases and authorities that may be applicable to this determination are cited in the comprehensive analysis made by Justice VandeWalle in *Eck v. City of Bismarck,* 283 N.W.2d 193 (N.D.1979) (*Eck I*).[2] See also *Rippley v. City of Lincoln,* 330 N.W.2d 505 (N.D.1983), and *Eck v. City of Bismarck,* 302 N.W.2d 739 (N.D.1981) (*Eck II*). *Eck I, Eck II,* and *Rippley* were zoning cases. Compare *Yegen v. City of Bismarck,* 291 N.W.2d 422, 424 (N.D.1980) with syllabus 5 of *Northern Pacific Railway Co. v. Morton County,* 131 N.W.2d 557, 559 (N.D. 1964).

▇ It is clear that whether or not there is a taking is a question of law which ordinarily is not to be presented to a jury. See the discussion in United *Power Ass'n v. Heley,* 277 N.W.2d 262 (N.D.1979). Nevertheless, where there is a dispute of the facts showing that there has been a taking or damaging of property, as there is in the instant case, there must be a hearing before the trial court on that fact question before the court can determine the question of law. It logically follows that findings of fact should be (and were) made as required by Rule 52(a), NDRCivP.[3] To the extent

that our disposition of this case may involve fact issues, we determine only if the findings of fact made by the trial court are clearly erroneous.

## I.

First, we will consider Minch's allegations that the rezoning ordinance is unconstitutional because it is "an unreasonable, arbitrary, and discriminatory spot zoning." Minch fails to advise us which provisions of the constitution are claimed to be violated.[4] Conclusion of law VIII provides:

"That the action of the City in rezoning plaintiff's property was based upon a comprehensive master plan and was in conformity with that plan and with a systematic program of 'down-zoning' or 'corrective zoning' and was not arbitrary and capricious."

Minch refers us to finding of fact VI as the support for conclusion of law VIII. Finding of fact VI provides:

"That the 'down-zoning' or 'corrective zoning' was in accordance with the comprehensive master plan of the City, which is known as the 'Barton-Aschman Plan.' "

▇ It is argued by Minch that that finding of fact is not supported by sufficient evidence—that the testimony more aptly indicates that the City was only reacting to the whims of a group of disgruntled neighbors. We believe that city officials may, by

2. General rules are especially made inapplicable by specific statutes and, in some cases, by the procedures adopted by the parties. "Zoning with compensation" is involved under some statutes, such as junkyard and billboard control along highways, pursuant to Chapters 24–16 and 24–17, NDCC. See *City of Kansas City v. Kindle,* 446 S.W.2d 807 (Mo.1969). The scope of the pleadings, prayer for relief, and demand for jury trial can all complicate the adoption of judicial guidelines. Compare the complexities of the instant case with the straight lines of *Rippley v. City of Lincoln,* 330 N.W.2d 505 (N.D.1983), both cases involving identical legal principles. Also compare the law proclaimed in *City of Fargo v. Fahrlander,* 199 N.W.2d 30 (N.D.1972), where mandamus by a property owner appears to be an approved remedy for someone in lieu of inverse condemnation. A legislative prescribed remedy would be helpful. See generally 27 Am.Jur.2d, Eminent Domain §§ 478–507.

3. When it is necessary to resolve conflicting evidence, the action is "tried upon the facts" within the scope of Rule 52(a), NDRCivP, *e.g., Voth v. Voth,* 305 N.W.2d 656, 658 (N.D.1981). Suits involving zoning ordinances, which involve fact resolution, are not exempt from the operation of Rule 52(a). See *City of Fargo, Cass Cty. v. Harwood Tp.,* 256 N.W.2d 694 (N.D.1977).

4. We could speculate what Minch may have had in mind: Sections 1, 11, 13, or 20 of Article I of the Constitution of North Dakota, or Section 1 of Article 14 of the Amendments to the Constitution of the United States. On the other hand, he may have meant Section 16 of Article I of the North Dakota Constitution, or Article 5 of the Amendments to the United States Constitution.

reacting to even unreasonable complaints, enact constitutional ordinances.

The validity of ordinances which exercise control over land use through police powers (zoning) has been long recognized. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016 (1926). See also *Golden v. Planning Board of Town of Ramapo,* 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (1972), and *Eck II, supra.*

> "In enacting a zoning ordinance the governing body of the city is exercising a legislative function, and where the question whether the determination of the City Council that a certain district shall be included in a classification of a comprehensive zoning plan is an unreasonable, arbitrary or unequal exercise of power is fairly debatable, courts will not substitute their judgment for that of the legislative body, and the conclusion of the latter will not be disturbed." *Midgarden v. City of Grand Forks,* 79 N.D. 18, 54 N.W.2d 659 (1952) at syllabus 1.

See *Munch v. City of Mott,* 311 N.W.2d 17 (N.D.1981).

■■■ Specific testimony by witnesses that a zoning change in a specific case is reasonable and is not arbitrary or discriminatory does not provide the type of convincing evidentiary support required to sustain either a finding of fact or a conclusion of law. Minch has failed to show that the zoning change violated any provision of the United States or North Dakota Constitution. Findings or conclusions that a statute or ordinance is constitutionally valid is entitled to a presumption of correctness.

## II.

Next we address the issue—did the rezoning exceed the bounds of police power and accomplish a "taking or damaging" without just compensation as prohibited by Article I, § 16 of the North Dakota Constitution.

We said before in remanding this case:

> "This court has counted zoning as a manifestation of the police power.... A decrease in the monetary value of property as a result of a zoning action does not

necessarily amount to a taking or even a damaging which would oblige the governmental entity to pay compensation.... Only where the zoning ordinance 'forbids substantially *all* use of regulated property' will a suit in inverse condemnation be appropriate.... If the ordinance is arbitrary, discriminatory or otherwise illegal but does not effect a taking or damaging, declaratory relief must be sought.... Thus zoning is relatively insulated from claims for damages." *Minch v. City of Fargo, supra,* 297 N.W.2d at 790. [Emphasis in original.]

Because Minch had alleged substantial reliance, we pointed out the need for an inquiry into Minch's reliance in this case in the light of our holding in *City of Fargo, Cass Cty. v. Harwood Tp.,* 256 N.W.2d 694, 700 (N.D.1977), where we stated:

> "... a landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed himself to his substantial disadvantage before the zoning change may be protected."

Without referring us to any specific finding of fact or to any specific conclusion of law, Minch provides us with a de novo type discussion of the testimony supporting his argument that he was entitled to rely upon representations allegedly made by representatives of the City. He does not refute the findings that were made nor the conclusions based thereon.

The City has called our attention to findings of fact numbered XV and XIX as follows:

### "XV.

> "That plaintiff asserts that it was his intention to construct a four-plex on his property before it was rezoned from R–3 to R–1, but that his intentions were never conveyed to the City by securing a building permit, by applying for a building permit, or making known his intentions to the City in any other way."

"XIX.

"That plaintiff had not commenced the construction of a multiple dwelling unit, nor had he established a multiple dwelling use on the property prior to the rezoning action which was finalized on May 4, 1976."

and conclusions numbered I and VI based thereon as follows:

"I.

"That, in 1975 and 1976, the construction of a five-stall garage on plaintiff's property was permitted, either under the prior zoning classification of R–3, or under the subsequent classification of R–1."

"VI.

"That the expenditure of funds by plaintiff for the construction of the five-stall garage does not constitute reliance on the pre-existing zoning classification of R–3, since such construction was permissible before and after the zoning change."

█ There were other findings of fact and conclusions which also have a bearing upon the issue before us. Findings which have not been attacked are presumed to be correct. *Fiebiger v. Fischer,* 276 N.W.2d 241, 244 (N.D.1979). We note that Minch makes no argument that the Fargo zoning ordinance "forbids substantially all use" of his property. *Eck I, supra,* 283 N.W.2d at 201. "Substantial reliance" can substitute for the loss of "substantially all use." *Minch v. City of Fargo, supra,* 297 N.W.2d at 790, and *City of Fargo, Cass Cty. v. Harwood Tp., supra,* 256 N.W.2d at 700.

Although the findings of fact might have been more explicit, we have no problem understanding therefrom the basis of the trial court's conclusion. There was no substantial expenditure in reliance on an unchanged ordinance.

Another matter that is argued in support of Minch's claims is that of estoppel. Minch says that all of the elements of estoppel, as set forth in *Farmers Cooperative Association of Churchs Ferry v. Cole,* 239 N.W.2d 808, 813 (N.D.1976), have been met. However, it is clear that there is a dispute of facts upon which an estoppel could be based. This is expressed in finding of fact XVI. The court concluded in conclusions of law IV and V that Minch was not entitled to rely on the discussions he had with the city building inspector.

"Estoppels against the public are little favored. They should not be invoked except in rare and unusual circumstances, and may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public. They must be applied with circumspection, and should be applied only in those special cases where the interests of justice clearly require it." *Abbey v. State,* 202 N.W.2d 844, 851 (N.D.1972), quoting from 31 CJS Estoppel § 138.

III.

Finally, we must address Minch's argument that he had established a non-conforming use. The trial court conclusion of law IX provides:

"That the actions of the plaintiff prior to the rezoning of his property on May 4, 1976, did not constitute the establishment of a non-conforming use."

That conclusion is supported by finding of fact XVIII as follows:

"That the five-stall garage which was constructed on plaintiff's premises was for the ostensible purpose of use with a dwelling unit having single family characteristics, but utilized by more than one party; and that the potential use for said garages remains the same after the rezoning."

█ Finding of fact XIX, which we hereinbefore quoted, supplies additional support for conclusion IX. These findings of fact are not clearly erroneous and we are satisfied that the trial court drew an appropriate conclusion therefrom. Actual nonconforming use as distinguished from mere contemplated use is a requisite. See 8A McQuillin, Municipal Corporations, 3rd Ed. Revised, §§ 25.185–25.188a.

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.