Melvin O. ARNESON, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson, Plaintiffs and Appellants,

v.

CITY OF FARGO; Cass County Drain Board, a subdivision of the County of Cass, State of North Dakota; North Dakota State Water Commission; Southeast Cass Water Management Board, Defendants and Appellees.

Civ. No. 9895.

Supreme Court of North Dakota.

March 12, 1981.

Overboe & Reiten, West Fargo, for plaintiffs and appellants; argued by David A. Overboe, West Fargo.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant and appellee City of Fargo; argued by W. Todd Haggart, Fargo.

Paul E. Grinnell, Moorhead, Minn., and Harold Halgrimson, Fargo, for defendants and appellees, Cass County Drain Bd. and Southeast Cass Water Management Bd.

PAULSON, Justice.

Melvin O. Arneson, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson, and Gladys S. Arneson [plaintiffs] appeal from an order issued by the District Court of Cass County on August 11, 1980, which order vacated the denial of the City of Fargo's motion for summary judgment and issued a summary judgment in favor of the City. We reverse and remand.

The plaintiffs own land in Cass County which bears the following legal description:

The Northwest Quarter (NW ¼) of Section Nine (9); the East Half (E ½) of the Northeast Quarter (NE ¼) of Section Eight (8); the West Half (W ½) of Section Four (4); and the Northeast Quarter (NE ¼) of the Southeast Quarter (SE ¼) of Section Five (5), all in Stanley Township, Cass County, North Dakota.

On July 20, 1971, the City of Fargo and the Cass County Drain Board, a subdivision of Cass County, entered into an agreement whereby the City was allowed to construct a low level dam, a lift station, and a diversion canal and to connect the dam and diversion canal with Cass County Drain Number 27 at a point located near a section line on a quarter of land on Section Five, in Stanley Township in Cass County. The City entered into the agreement in order to divert waters from the Sheyenne River to the Red River of the North at a point of the Red River located south of the City. The City agreed to indemnify all real property owners in the assessment district of Drain No. 27 against all claims, damages, and expenses resulting from the use of the diversion canal. The plaintiffs' land is located within the assessment district of Drain No. 27. The entire cost of the Sheyenne River Diversion Dam Complex was borne by the City and the North Dakota Water Conservation Commission, and the agreement between the City and the Water Conservation Commission was entered into on August 9, 1971. The dam and water pumps allowed water from the Sheyenne River to be pumped into a diversion canal. On August 30, 1976, until June 20, 1977, the City diverted water from the Sheyenne River into Cass County Drain No. 27. The drain also served to drain the farmland owned by the plaintiffs. Water flowing down the diversion canal and into Drain No. 27 backed up and overflowed onto the plaintiffs' land. The water overflow prevented the plaintiffs from tilling and planting crops on their land during the 1977 crop year and the 1978 crop year.

The plaintiffs commenced this action on December 20, 1978, by way of a summons and complaint which alleged that the City negligently failed to erect a levee, dam, or other obstruction sufficient to prevent water from the diversion system from backing up into Drain No. 27 and overflowing onto the plaintiffs' land. The plaintiffs amended their complaint on December 13, 1979, and on February 1, 1980, in order to include as defendants in the action the Cass County Drain Board, the North Dakota Water Conservation Commission, and the Southeast Cass Water Management Board. The City submitted its answer to the initial complaint on February 20, 1979; and submitted its answer to the amended complaint on February 28, 1980. On December 4, 1979, the City submitted motions pursuant to Rules 12 and 56 of the North Dakota Rules of Civil Procedure for dismissal of the plaintiffs' complaint or for summary judgment because the plaintiffs did not file a notice of claim with the Cass County auditor, as required by subsection 1 of § 4 of Chapter 295 of the Session Laws of North Dakota for 1975. In a pre-trial conference order issued on January 8, 1980, the district court denied the City's motion for dismissal of the plaintiffs' complaint, as well as the

City's motion for summary judgment. The City submitted a motion pursuant to Rule 42(b), N.D.R.Civ.P., for a separate trial on the notice of claim issue on December 26, 1979. By virtue of an order issued on January 8, 1980, by the district court, the Cass County Drain Board, the North Dakota Water Conservation Commission, and the Southeast Cass Water Management Board were included as defendants in the plaintiffs' action. They each then submitted answers to the plaintiffs' complaint and each submitted cross-claims against the City. The City submitted its answer to the cross-claims on May 6, 1980. At a pre-trial conference held on August 4, 1980, the district court did not rule on the City's motion for a separate trial but reconsidered the City's motion for summary judgment and vacated its earlier order which denied a summary judgment in the City's favor. The order of the district court which granted summary judgment in the City's favor was entered on August 11, 1980.

The City of Fargo is a municipal corporation organized under the laws of North Dakota and located in Cass County. The plaintiffs' land is located in Cass County and the water overflow occurred during the time that the City diverted water from the Sheyenne River into Drain No. 27. The water was diverted into the drain and overflowed onto the plaintiffs' land during a period extending from August 30, 1976, to June 20, 1977. The plaintiffs' notice of claim was filed on December 12, 1977, and was submitted to the City of Fargo rather than to the county auditor. Subsections 1 and 2 of § 4 of Chapter 295 of the 1975 Session Laws of North Dakota, provide, in pertinent part:

> "SECTION 4. NOTICE—STATUTE OF LIMITATIONS.)
>
> "1. Except as otherwise provided, any claim against a political subdivision for injuries alleged to have arisen under the provisions of this Act shall be filed, within ninety days after the alleged occurrence of such injury, in the office of the county auditor. Such claim shall be signed and verified by the claimant and shall describe the time, place, cause, and extent of the damage or injury, shall contain an abstract of the facts upon which the claim is based, and shall specify the amount of damages claimed therefor. . . .
>
> "2. An action brought under this Act must be commenced within three years after the cause of action has accrued."

By its own terms, Chapter 295, 1975 S.L., remained in effect from the date of its approval, April 8, 1975, through June 30, 1977. The only issue presented for our consideration is whether or not the order of the district court which granted summary judgment in favor of the City was proper.

The City made a motion to dismiss the appeal and the plaintiffs opposed the motion. The City then on oral argument before this court withdrew its motion to dismiss the appeal. On appeal from an order granting summary judgment, we must determine if the information available to the district court, when viewed in the light most favorable to the plaintiffs, precluded the existence of a genuine issue as to any material fact and thus entitled the City to a summary judgment as a matter of law under Rule 56(c), N.D.R.Civ.P. The evidence must be viewed in the light most favorable to the party against whom the summary judgment was granted. *Winkjer v. Herr*, 277 N.W.2d 579 (N.D.1979). Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law, or if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts. *Helbling v. Helbling*, 267 N.W.2d 559 (N.D.1978). Summary judgment is rarely appropriate in negligence actions. See *Weiss v. Bellomy*, 278 N.W.2d 119 (N.D.1979).

Under Rule 56(c), N.D.R.Civ.P., we may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in determining whether or not there is a genuine issue of material fact. A deposition of Melvin O. Arneson was taken on June 26, 1979. Melvin O. Arneson testi-

fied that during the summer and fall of 1976, the farmers living in the Cass County area were experiencing a severe drought. The City began using its diversion system and Drain No. 27 in order to supplement the City's water supply. The dam which was to restrict the flow of water onto the plaintiffs' land was not capable of restricting the entire water flow. As a result of the deficiency, water flowed onto the plaintiffs' land during the winter and spring months of 1977. The plaintiffs raised a variety of crops which include wheat, barley, oats, and flax. The planting season for all of these crops, except flax, began in April and May of 1977. Melvin O. Arneson testified that water covered virtually all of the plaintiffs' land in May of 1977 and that he realized the problems created by the City's water diversion system. In addition, a heavy rain which occurred on May 4, 1977, eliminated the possibility of planting any crops for the remainder of the planting season on plaintiffs' land. Melvin O. Arneson testified further concerning this, as follows:

"Q   So in the spring of '77 you knew by May anyway that you had additional problems as a result of the diversion; isn't that correct?

"A   Yeah.

"Q   Is that pretty accurate or was it earlier than that or later than that?

"A   No, that's pretty accurate.

"Q   May of '77?

"A   Yeah.

"Q   Middle of May?

"A   Oh, it was the last part of May. I know it was awful late.

"Q   So May 25?

"A   Yeah, around in there someplace.

"Q   That's your best estimate of when you knew that you had additional problems beyond the problems that you had in prior years?

"A   Yeah.

"Q   And you were aware that—or at least you thought that those problems were a result of something of the water backup?

"A   Yeah, those sat under water all winter and soaked up.

"Q   You had no doubt in your own mind that the water sitting on your land in the spring of '77 was there because of the pumping; isn't that right?

"A   Yeah.

.     .     .     .     .

"Q   That rain was a hell of a big rain, wasn't it?

"A   Yeah, that took care of the situation for the rest of the summer."

Chapter 295 of the 1975 Session Laws of North Dakota was enacted in response to this court's decision in *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974), in which governmental immunity for political subdivisions was abolished. Our decision in *Kitto* was given a prospective application to actions arising fifteen days after adjournment of the Forty-fourth Legislative Assembly. By delaying the effect of the decision, the Legislature was given an opportunity to adopt legislation to ease the hardships to political subdivisions arising from the abolishment of governmental immunity. The Legislature enacted Chapter 295 and expressed its intent that the Act provide temporary protection to political subdivisions until July 1, 1977. Subsection 1 thereof required that a written claim be filed against a political subdivision within ninety days after the alleged occurrence of an injury. The plaintiffs are members of the same family and Melvin O. Arneson is primarily responsible for planting crops. His testimony reveals that in May of 1977 he and the members of his family had notice that the water would prevent them from planting crops on the land affected by the City's water diversion system. The plaintiffs did not file a notice of claim with the county auditor of Cass County; rather, a notice of claim was filed with the City on December 12, 1977. The earliest notice of the problem was given to the City in a letter dated November 22, 1977, which date was well beyond the 90-day period prescribed by subsection 1 of section 4 of Chapter 295 of the 1975 North Dakota Session Laws. Chapter 295 remained in effect only until July 1, 1977.

The notice of claim required by Chapter 295, § 4, 1975 S.L., must specify the time, place, cause, and extent of the damage or injury. The word "injury" as defined by such chapter in § 1, includes damage to or loss of property. The plaintiffs argue that they did not know whether or not they had suffered damages on or before June 30, 1977, and that Chapter 295, 1975 S.L., did not apply because no cause of action had accrued on or before June 30, 1977. A cause of action based upon negligence, which was the basis for the plaintiffs' claim, consists of four elements: (1) a duty recognized by law for the protection of others against unreasonable risks; (2) a failure to conform to the standard of conduct required by the duty; (3) a causal connection between the conduct and the resulting injury; and (4) damage resulting to the interests of another. See Prosser, Handbook of the Law of Torts § 30 (1st Rep.1972). The basis for the plaintiffs' argument is the fact that they did not know the extent of the damage to their land. In past years the plaintiffs had planted flax in June and had still received a crop capable of harvest. Their argument is also based on the fact that they viewed any moisture which the land had received as a benefit, rather than as an injury, because of the lingering effect of the previous year's drought.

The plaintiffs' argument is untenable because the deposition testimony of Melvin O. Arneson reveals that the plaintiffs realized that they could not plant a crop after May of 1977. The loss of the capability to plant crops was certainly damage and the plaintiffs do not seriously dispute the fact that they were damaged prior to July 1, 1977. Rather, the argument is based on the fact that the extent of the damage was not known. Knowledge of the full extent of the damage suffered by reason of an injury is not required, at least in the situation where there is a continuous flow of water on the plaintiffs' land. See *Housing Authority of the Town of Limon v. Leo A. Daly Company*, 533 P.2d 937 (Colo. App.1975); *Greene v. Green Acres Const. Co.*, 543 P.2d 108 (Colo.App.1975); *Rygg v. United States of America*, 334 F.Supp. 219 (D.N.D.1971). In *Besette v. Enderlin Sch. Dist. No. 22*, 288 N.W.2d 67 (N.D.1980), we established that actual notice of an incident giving rise to a cause of action against a political subdivision under Chapter 295, 1975 S.L., is insufficient to satisfy the requirement of a written notice or claim under the statute. The case of *Besette, supra*, indicates that actual notice of the plaintiffs' claim, which in the ordinary case would be attributable to the City by virtue of its employees, is not sufficient to satisfy the requirements of Chapter 295, 1975 S.L. Because the plaintiffs failed to properly file a notice of claim under Chapter 295, 1975 S.L., they are therefore precluded from bringing an action based upon negligence against the City.

Rule 56(c) of the North Dakota Rules of Civil Procedure provides that the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits may be examined to determine whether a genuine issue exists as to any material fact. Rule 8(f), N.D.R.Civ.P., provides that pleadings are to be construed so as to do substantial justice. Our review of the pleadings discloses that Arneson's complaint contains a cause of action based upon inverse condemnation. See *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979). Chapter 295, 1975 S.L., does not apply to actions based upon inverse condemnation. Our decision in *Minch v. City of Fargo*, 297 N.W.2d 785 (N.D.1980), established that claims for inverse condemnation were not barred by governmental immunity because the inverse condemnation claim proceeds from a constitutional right (§ 16, N.D.Const.) and not from a tort theory.

The summary judgment granted by the district court in favor of the City is reversed and the case is remanded to the district court for trial on the inverse condemnation claim alone.

ERICKSTAD, C. J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the law pronounced by the majority but I do not agree that we should

encourage avoiding the rules. The City of Fargo moved to dismiss Arneson's appeal because the trial court did not make an express determination that there is no just reason for delay nor an express direction to enter a *final* judgment as contemplated by Rule 54(b), N.D.R.Civ.P. At oral argument, counsel withdrew the motion and counsel for both parties "stipulated" to a waiver of Rule 54(b). In *Minch v. City of Fargo*, 297 N.W.2d 785, 789 (N.D.1980), we said: "The rule does not recognize any type of stipulation to nullify its operation." We ought to declare the summary judgment in favor of the City of Fargo to be interlocutory and dismiss the appeal. That would permit the trial court to again consider the adequacy of the complaint to state a cause of action, not in tort but under the provision of Section 16 of the Constitution of North Dakota (formerly § 14) in inverse condemnation.