Melvin O. ARNESON, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson, Plaintiffs and Appellees,

v.

CITY OF FARGO, Defendant and Appellant,

Cass County Drain Board, a subdivision of the County of Cass, State of North Dakota; North Dakota State Water Commission, Defendants and Appellees,

Southeast Cass Water Management Board, Defendant.

Melvin O. ARNESON, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson, Plaintiffs and Appellants,

v.

CITY OF FARGO; Cass County Drain Board, a subdivision of the County of Cass, State of North Dakota; North Dakota State Water Commission, Defendants and Appellees,

Southeast Cass Water Management Board, Defendant.

Melvin O. ARNESON, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson, Plaintiffs and Appellees,

v.

CITY OF FARGO; Cass County Drain Board, a subdivision of the County of Cass, State of North Dakota, Defendants and Appellees,

North Dakota State Water Commission, Defendant and Appellant,

Southeast Cass Water Management Board, Defendant.

Melvin O. ARNESON, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson, Plaintiffs and Appellees,

v.

CITY OF FARGO; North Dakota State Water Commission, Defendants and Appellees,

Cass County Drain Board, a subdivision of the County of Cass, State of North Dakota, Defendant and Appellant,

Southeast Cass Water Management Board, Defendant.

Civ. Nos. 10233, 10249 to 10251.

Supreme Court of North Dakota.

March 3, 1983.

Overboe & Cuffe, West Fargo, for Melvin O. Arneson, Gerhard H. Arneson, Arnold Arneson, Vernon Arneson and Gladys S. Arneson; argued by David A. Overboe, West Fargo.

Solberg, Stewart, Boulger & Miller, Fargo, for City of Fargo; argued by Wayne O. Solberg, Fargo.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for Cass County Drain Bd.; argued by Duane R. Breitling, Fargo.

Joseph J. Cichy, Asst. Atty. Gen., State Water Com'n, Bismarck, for State Water Com'n.

ERICKSTAD, Chief Justice.

This is an appeal by the City of Fargo, the Cass County Drain Board, and the North Dakota State Water Commission (the Defendants) from a judgment of the District Court of Cass County, entered April 28, 1982, in favor of the plaintiffs (the Arnesons). The Arnesons have filed a cross-appeal asserting that the district court abused its discretion in awarding an inadequate amount of attorney's fees and expert witness fees. We affirm in part, reverse in part, and remand for a redetermination of expert witness fees.

The Sheyenne River Diversion Project, completed in 1972, was constructed to allow the transfer of water from the Sheyenne River into the Red River to be utilized by

the City of Fargo as an alternative water supply source. As part of this project, a dam was built approximately four miles south of West Fargo to impound a small quantity of water on the Sheyenne River. A pumping station was constructed to lift water from the impounded area into a diversion channel through which the water flows into Cass County Drain No. 27 (Drain 27) which is a partially man-made and partially natural drain. From Drain 27, the water flows into a natural drainage area known as Rose Coulee and from there into the Red River to the south of and upstream from the City of Fargo where the water ultimately flows downstream for use by the City of Fargo. At the point where water flowing in the diversion channel enters Drain 27, a small dam or weir was constructed to prevent the water from flowing south in Drain 27.

The Arnesons own land in Cass County with the following legal description:

"The Northwest Quarter (NW ¼) of Section Nine (9); The East Half (E ½) of the Northeast Quarter (NE ¼) of Section Eight (8); the West Half (W ½) of Section Four (4); and the Northeast Quarter (NE ¼) of the Southeast Quarter (SE ¼) of Section Five (5), all in Stanley Township, Cass County, North Dakota."

Their farmland is located within the assessment district of Drain 27. Since the completion of the Sheyenne River Diversion Project, the pumping station has been used to divert water from the Sheyenne River for use by the City of Fargo during one period from August 30, 1976, until June 20, 1977.[1] During the fall of 1976, water which was being diverted by the pumping station from the Sheyenne River rose to such a level in Drain 27 that it began to flow south over the top of the small dam located in the drain. Water in the drain south of the dam spilled over its banks and flooded the Arneson farmland. The flooding inhibited at-tempts by the Arnesons to till the ground and plant crops during the 1977 and 1978 crop years.

During December, 1978, the Arnesons commenced a lawsuit against the Defendants for the damage caused by the flooding of their farmland. The district court entered a summary judgment dismissing the lawsuit on the ground that a timely notice of claim had not been filed, from which the Arnesons appealed. On appeal this Court, in *Arneson v. City of Fargo*, 303 N.W.2d 515 (N.D.1981), concluded that the district court had correctly dismissed the Arnesons' cause of action based upon negligence for failure to properly file a notice of claim but that the Arnesons' complaint also contained a cause of action based upon inverse condemnation which was not subject to dismissal. Accordingly, this Court remanded the case to the district court for trial on the inverse condemnation claim.

On remand the Arnesons elected to proceed on a theory that the Defendants, through the construction and use of the Sheyenne River Diversion Project, caused a permanent taking of a flood easement upon the Arneson farmland entitling the Arnesons to compensation for the diminution in value of the farmland resulting from that taking. It was understood and agreed by all parties that the Arnesons would not seek compensation for nor introduce evidence of any temporary damage or loss of crops during 1977 and 1978 as a result of the flooding caused by use of the Sheyenne River Diversion Project during 1976 and 1977. The jury returned a verdict awarding the Arnesons compensation in the amount of $140,-000.00 for diminution in the value of their farmland caused by the Defendants' taking of a permanent flood easement upon the property. The Arnesons were awarded interest by the court at the rate of 6% per annum from the date of the taking[2] in the amount of $46,200.00, and the court also

---

1. The undisputed testimony shows that the pumps ran from August 30, 1976, until March 17, 1977. Approximately two months later, on May 20, 1977, the pumps were once again started and they ran until they were stopped on June 20, 1977.

2. During trial the parties stipulated that, if there was a compensable taking, it occurred on November 1, 1976.

awarded the Arnesons costs and disbursements of $1,768.80 and attorney's fees of $9,750.00 resulting in a total judgment of $197,718.80.

On appeal from the judgment, the Defendants have raised two primary issues:

(1) Whether or not the district court erred upon instructing the jury that it (the jury) must decide if the Defendants' actions entitled the Arnesons to compensation for a permanent taking or diminution in the value of their property; and

(2) Whether or not there is substantial evidence in the record to support the jury's verdict.

The Defendants assert that the court, not the jury, should have decided whether or not there was a compensable permanent taking or damaging of the Arneson property, and that the court erred in its instructions to the jury in this regard. In its instructions, the district court told the jurors that the Defendants "damaged and in effect took part of" the Arneson property and then instructed the jurors that they must determine whether the evidence supported an award of damages "of a permanent character":

"The Defendants (one or more of them) damaged and in effect took part of, Plaintiffs' property on November 1st of 1976, and the Plaintiffs have elected to treat the injury to their real property as permanent.

"The Court instructs the Jury, therefore, that the only question for the jury to determine in this case is the difference between the fair market value before and after the inflicting of the damage.

"The burden rests upon the owners or Plaintiffs in this case to prove to your satisfaction by a greater weight of the evidence, the compensation to which they are entitled.

\* \* \* \* \* \*

"Because the plaintiffs have elected to treat the injury to their real property as permanent, you must determine whether or not the actual condition created by Sheyenne River Diversion to which the plaintiffs property had been subjected is of a permanent character and whether or not continuing damages could be predicted with relative certainty or could be fairly perceived.

"The giving of instructions on damages shall not be taken as a recognition that those damages exist. Whether damages exist and whether they are proximately caused by the taking are questions of fact for you to determine."

When the Defendants were given an opportunity to object to the instructions, the following relevant dialogue occurred between the court and counsel for the City of Fargo whose statements were concurred in by the attorneys for the other defendants:

"MR. SOLBERG: All right, Your Honor, on page four we take exception to it in its present form and that is a relatively minor request for instruction, on line two where it says, 'To their real property as permanent, you must determine whether or not the actual condition created by Sheyenne River diversion to which the Plaintiffs property has been subjected is of a permanent character and whether or not continuing damages could be predicted with relative certainty or could be fairly perceived.' The instruction in its current form seems to infer again that there is a permanent damage and we would prefer that the Jury be instructed that they are to find whether or not there is a permanent damage.

"THE COURT: I will grant that change. That was the intent of the Court in making the instruction.

\* \* \* \* \* \*

"MR. SOLBERG: Okay, Your Honor. Page 16, the latter part of that instruction is excepted to as being inconsistent with page four of the Court's instructions, proposed instructions. And again if I may make a suggestion and read what we deem would be a proper instruction, starting at the top, the wisdom or propriety of the taking or the need for such taking by the City of Fargo is not an issue in this case. The only issues to be

determined by the Jury in this case are whether or not the taking was permanent and, if so, the assessment of just compensation for diminution in the fair market value of the property in controversy. I think that more accurately and fairly states the issues in this case, Your Honor.

"THE COURT: The instruction is repetitive. . . ."

Throughout the foregoing dialogue, counsel for the Defendants urged the court to instruct the jury that, although the court determined there was a compensable taking or damage of the Arneson property, the question of whether or not the evidence supported a *permanent* taking or damage was for the jury to determine.

 When a party is given an opportunity to object to instructions prior to their submission to the jury but fails to raise an objection, the party cannot complain on appeal that the instructions were in error. *Waletzko v. Herdegen,* 226 N.W.2d 648 (N.D.1975). Furthermore, when a party requests an instruction which is then given in substance to the jury by the court, the party cannot assert on appeal that the instruction constitutes error. *Wilson v. General Motors Corp.,* 311 N.W.2d 10 (N.D. 1981); *Hook v. Crary,* 142 N.W.2d 140 (N.D. 1966). On the question of finding a permanent taking or damage, the court instructed the jury substantially as requested by the Defendants. Having urged the court to instruct the jury to determine whether or

not a permanent taking had occurred, the Defendants cannot now assert that the court's instructions in that regard were in error. Those instructions which were. not objected to by the parties became the law of the case. *Waletzko v. Herdegen,* 226 N.W.2d 648 (N.D.1975).

The Defendants also assert on appeal that there is not substantial evidence to support the judgment in this case. We disagree.

 During the trial, the Arnesons introduced evidence in support of the following two grounds upon which they alleged that the Defendants acquired a permanent flood easement over their property resulting in a permanent diminution of value to their property: (1) future use of the diversion facility to divert water from the Sheyenne River could result in flooding of the Arneson property as occurred in 1976 and 1977; and (2) the dam located in Drain 27 as a part of the diversion facility restricts the flow of water in the drain reducing the ability of the Arneson farmland, which drains into Drain 27, to adequately dispose of excess surface water. The Defendants introduced evidence to show that the diversion facility may never again be used to provide an alternate source of water to the City of Fargo, and that, if used, improved methods would be utilized to eliminate the possibility of diverted waters flowing south in Drain 27 causing flooding of the Arneson farmland.[3] The Defendants also introduced

**3.** On December 3, 1982, during the pendency of this appeal, the Defendants filed a motion requesting this Court to take judicial notice "of certain proceedings by the governing body of the City of Fargo" at its November 22, 1982, meeting of the board of city commissioners. At that meeting, the commissioners received and filed a communication from the director of utilities for the City of Fargo in which the director stated that the City of Fargo has a real need for an alternate and emergency water supply source and that an engineering firm was employed by the city to investigate "the availability of a ground water supply and enclosing the Sheyenne Diversion." In the communication, the director stated that the project to meet the city's needs would be done in two phases: the first phase being an underground conduit from the Sheyenne River to the filtration plant and the second phase being the development of

the well field with a closed conduit tying into the Sheyenne Diversion conduit. At the meeting, the commissioners agreed to have the water utilities commissioner begin to interview engineering firms for the project.

Assuming, without deciding, that this Court may take judicial notice of the foregoing proceedings, the Defendants' motion is hereby denied on the following grounds: (1) it is unnecessary to take judicial notice in this case because, without relying upon the information of which this Court is requested to take judicial notice, we agree with the Defendants' assertion that the Arnesons have failed to prove that there will be inevitable reoccurrences of flooding upon their property caused by the diverting of water from the Sheyenne River by the Defendants; and (2) the minutes of the city commissioner's meeting of which this Court has

evidence to show that the presence of the dam in Drain 27 does not inhibit the flow of water in the drain and does not inhibit drainage of the Arneson farmland.

■ The Defendants assert that one occurrence of flooding caused by governmental action cannot support a claim for compensation for a permanent taking unless there is proof of future inevitable frequent reoccurrences of the flooding. We agree that a landowner cannot receive compensation for a *permanent* taking or *permanent* damaging of his property due to governmentally caused flooding of the property unless it is proven that there will be frequent inevitable reoccurrences of the flooding. *See, Accardi v. United States,* 599 F.2d 423, 220 Ct.Cl. 347 (Ct.Cl.1979); *Barnes v. United States,* 538 F.2d 865 (Ct.Cl.1976).[4] With regard to this issue the United States Court of Claims, in *Accardi, supra,* states:

"Where a claim of taking of private property for a public use is founded upon interference with land due to flooding, the burden of proving the claim consists of more than a mere showing that governmental action 'has interfered with property rights.' *Bryant v. United States,* Ct.Cl., 578 F.2d 1389 (1978); *Fromme v. United States,* 412 F.2d 1192, 188 Ct.Cl. 1112 (1969). In general terms, where no permanent flooding of the land is involved, proof of frequent and inevitably recurring inundation due to governmental action is required. *Ibid;* see also *Barnes v. United States,* 538 F.2d 865, 870–71, 210 Ct.Cl. 467, 474–76 (1976); *Hartwig v. United States,* 485 F.2d 615,

620, 202 Ct.Cl. 801, 809–10 (1973); *National By-Products, Inc. v. United States,* 405 F.2d 1256, 1272–74, 186 Ct.Cl. 546, 575–78 (1969)." 599 F.2d at 429.

■ The Defendants concede in this case that the diversion of water from the Sheyenne River during 1976 and 1977 caused flooding of the Arneson property which would have supported a claim for a temporary taking or damaging of the property. However, the Arnesons elected to proceed on a theory of a *permanent* taking which, we agree with the Defendants, requires proof that there will be frequent inevitable reoccurrences of flooding caused by the diverting of water from the Sheyenne River by the Defendants. Having reviewed the entire record in this case, we conclude that there is not substantial evidence to prove that there will be frequent inevitable reoccurrences of flooding caused by an overflow of diverted water from the Sheyenne River which would support, on that ground, the Arnesons' claim for damages for a permanent taking of their property.

However, the second ground upon which the Arnesons claim the Defendants have caused a permanent taking of their property does not require proof that in the future diverted water from the Sheyenne River will flood the property. This alternative ground on which the Arnesons seek permanent damages is that the presence of the dam in Drain 27 inhibits the flow of water through the drain resulting in a diminished capability of the Arneson property to rid itself of excess surface water. Unlike the flooding caused by an overflow of diverted

been requested to take judicial notice merely indicate that the commissioners "received and filed" the utility director's communication and then agreed to have the water utility commissioner "interview" engineering firms relative to the proposed project. That information leaves to mere speculation when, if ever, and how the City of Fargo might alter its method of diverting water from the Sheyenne River for use by the city. Because of its speculative nature, that information would not constitute a sufficient basis upon which to conclude that the previously used method of diverting water from the Sheyenne River utilizing the Sheyenne River Diversion facility has been replaced by an alternative method.

4. These federal cases involve the Just Compensation Clause of the federal constitution which requires payment of compensation when private property is "taken" whereas the North Dakota Constitution requires payment of compensation when private property is "taken or damaged." Nevertheless, we believe the rationale of these cases supports the proposition that a landowner cannot receive compensation for either a *permanent taking* or a *permanent damaging* of private property by governmentally caused flooding unless there is proof that there will be inevitable frequent reoccurrences of the flooding.

Sheyenne River water which occurred on a one-time basis and for which their is no proof of inevitable reoccurrence, the existence of the dam in Drain 27 presents a continuous obstacle to waterflow which, Melvin Arneson testified, inhibits drainage of the Arneson farmland almost every year:

"Q. Would you tell us again the effects that this dam in drain 27 has to your land?

\* \* \* \* \* \*

"A. It holds the water back so it don't get out as fast as it should.

"Q. Does this happen just about every year?

\* \* \* \* \* \*

"A. Yes, it does."

At another point in the trial, Melvin testified:

"Q. When it rained in the spring of '77, what happened to the runoff from your fields?

"A. Just sat there, there was no place to go.

"Q. By no place to go, would you explain that to us?

"A. Well, that the drain and that was full, it had to drain out of the drain before it could run off the field and into drain 27 to run off the land so we could work it.

"Q. Does this structure in the drain, that dam, retard the drainage of your land now when you get a rainfall?

"A. Oh yes.

"Q. Hold it back for a while?

"A. Hold it back for a while, yes.

"Q. Prior to the construction of this dam, did your land drain faster than it does now?

"A. Oh yes, quite a bit faster."

Melvin testified that the diversion project has reduced the value of 600 acres of Arneson farmland from $800.00 an acre to $550.00 per acre for a total diminution in value of $150,000.00.

Robert Breng, a farmer whose farmland is located near the Arnesons, also testified regarding the drainage problems caused by the dam:

"Q. Do you know whether or not that dam restricts the flow of water in that drain channel?

"A. Definitely.

"Q. Does it hold it back in the spring?

"A. Definitely.

"Q. Hold the water back so that water is held back on the land?

"A. Correct.

\* \* \* \* \* \*

"Q. What effect does water on the land have as far as farming in the spring?

"A. Well, it would sop up the land and get what we call sour, you don't—you aren't able to aerate it so the grain will germinate properly.

\* \* \* \* \* \*

"Q. Are there any other effects that this hold back of the water in the spring would have on the land and farming?

"A. Well, it would create a weed problem being you can't get out there. It definitely will hinder operations for the next coming year.

"Q. Will it make planting difficult?

"A. Oh, certainly.

"Q. Will it delay planting?

"A. Yes.

\* \* \* \* \* \*

"Q. If there is a delay in planting crops, does that have any detrimental effect on yield or anything else?

"A. Definitely, you can expect a much smaller yield."

Garfield Holmen, a farmer who also owns farmland near the Arneson property, testified that the dam located in Drain 27 retards the flow or drainage of farmland located south of the dam by "at least 20 percent," and reduces crop yields by 10 to 40 percent depending upon the climate and land conditions in a particular season.

Gene Hetler testified on behalf of the Arnesons as an expert in real estate appraisal. Hetler testified that the existence of the diversion facility has caused a permanent diminution in the value of the Arneson farmland of $146,497.50.

The Defendants introduced evidence during the trial to refute the Arnesons' evidence that the dam in Drain 27 restricts the drainage of surface waters from the Arneson farmland. Mr. Robert Boone, the engineer who designed Drain 27, testified on behalf of the Defendants that the dam located in Drain 27 has a negligible effect on the drainage of surface waters from the Arneson farmland. At the close of the Defendants' case, and at the Defendants' request, the court allowed the jury to view the scene of the diversion facility and the Arneson property in relation to it.

■ It is well-settled that a jury verdict will not be disturbed on appeal if there is substantial evidence to support it. *Grzadzielewski v. Walsh County Mut. Ins. Co.,* 297 N.W.2d 780 (N.D.1980); *City of Hazelton v. Daugherty,* 275 N.W.2d 624 (N.D.1979); *Everson v. Partners Life Insurance Company,* 268 N.W.2d 794 (N.D.1978). Justice Sand, writing for a unanimous Court in *Daugherty, supra,* explains our standard for reviewing jury verdicts:

"Our review of questions of fact tried to a jury is limited to determining if there is substantial evidence to support the verdict. Evidence is viewed in the light most favorable to the verdict and it is only when reasonable men can reach but one conclusion upon review of the issues that the evidence becomes a question of law for this court. *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978). Thus, unless the verdict is so flagrantly against the weight of the evidence that it appears that the jury was actuated by bias or prejudice, the verdict will not be set aside. *Northern States Power Co. v. Effertz,* 94 N.W.2d 288 (N.D.1958)." 275 N.W.2d at 627.

■ We conclude that there is substantial evidence upon which the jury could have found that the dam located in Drain 27, as part of the diversion facility, restricts drainage of the Arneson farmland, thereby resulting in a permanent diminution in the value of the Arneson property of $140,000.00. The ever-present obstacle to surface water drainage caused by the dam's existence constitutes a permanent taking of a "flood" easement on the Arneson property just as surely as would frequent inevitable reoccurrences of diverted water being flooded onto the property. Although there was evidence upon which the jury could have reached a contrary conclusion, it did not do so; and we will not substitute our judgment for the jury's where, as in this case, there is conflicting evidence from which reasonable men might draw different conclusions. *Grzadzielewski v. Walsh County Mut. Ins. Co.,* 297 N.W.2d 780 (N.D.1980).

The Arnesons have filed a cross-appeal from the district court's award to them of attorney's fees for legal services provided by Mr. Overboe and of expert witness fees for services provided by Mr. Hetler. The Arnesons assert that the district court abused its discretion in substantially reducing the amount of attorney's fees and expert witness fees requested by the Arnesons.

Pursuant to Section 32–15–32, N.D.C.C., the district court awarded attorney's fees of $9,750.00, expert witness fees for Mr. Hetler's services in the amount of $1,500.00, and miscellaneous disbursements of $268.80, for a total of $11,518.80.

■ The right of eminent domain is to be exercised in the manner provided under Chapter 32–15, N.D.C.C. In *United Power Association v. Moxness,* 267 N.W.2d 814 (N.D.1978), we stated that Section 32–15–32, N.D.C.C., has no application "to proceedings provided for outside of Chapter 32–15." However, an inverse condemnation action constitutes, in effect, a proceeding provided for under Chapter 32–15, N.D.C.C., which, under Section 32–15–01, N.D.C.C., provides in relevant part, "private property shall not be taken or damaged for public use without just compensation first having been made to or paid into court for the owner." The purpose of an inverse condemnation action is to allow a landowner whose private property has been taken for public use to secure the just compensation which he should have received in proceedings instituted by the public entity under Chapter 32–15, N.D.C.C., prior to the taking or damaging of the

property. Accordingly, we conclude that when a landowner brings an action in inverse condemnation through which he receives a compensation for the taking or damaging of his property for public use it is proper for the trial court to award, in its discretion, reasonable costs and attorney's fees under Section 32–15–32, N.D.C.C.

The Arnesons assert that the district court abused its discretion by not awarding reasonable attorney's fees to the Arnesons for legal services provided by Mr. Overboe. The Arnesons requested an assessment of attorney's fees in the amount of $47,200.00 based upon an itemization of services provided by Mr. Overboe totaling 510 hours. The district court awarded an assessment of attorney's fees to the Arnesons in the amount of $9,750.00 for 150 hours of legal services at $65.00 per hour.

In awarding the reduced assessment of attorney's fees from that requested by the Arnesons, the court disallowed 101 hours of legal services which were itemized as services provided in connection with the Arnesons' appeal from a summary judgment dismissing the Arnesons' action on the ground that the Arnesons had failed to file a timely notice of claim. In *Arneson v. City of Fargo,* 303 N.W.2d 515 (N.D.1981), this Court concluded that the Arnesons had failed to provide a proper notice of claim and that as a result their action against the Defendants based upon negligence was properly dismissed. This Court further determined that the Arnesons' complaint contained a cause of action based upon inverse condemnation as to which a notice of claim was not required and as to which they were therefore entitled to a trial on the merits. In denying the 101 hours of service provided in connection with the appeal, the district court concluded that the focus of the appeal and the legal services rendered in connection with it primarily involved the notice issue on the tort claim and that it would be improper to assess attorney's fees for those services against the Defendants, under Section 32–15–32, N.D.C.C., relative to the inverse condemnation claim. We conclude that the district court's determination did not constitute abuse of discretion.

The district court, in a memorandum opinion dated March 30, 1982, further explained its decision to award a reduced assessment of attorney's fees from those requested by the Arnesons:

"The Court further notes that from the period of 8–02–81 through 8–21–81, attorney for Plaintiffs in a period of twenty straight days averaged eight and three quarter hours of work upon this case per day. The Court has difficulty to ascertain whether such a monumental amount of work was necessary or proper in this case as the itemization for the most part only refers to preparation for trial. It is further noted that inconsistencies appear inasmuch as an item 3–10–80 consists of twenty-five hours in consultation with three parties, none of which were called as expert during the course of the trial. The total hours claimed by the attorney for Plaintiffs excluding the appeal which the Court has previously excluded is four hundred and nine hours. The Court is of the opinion that given the discrepancies as previously discussed that the figure is excessive. The Court further notes that in the case of *Municipal Airport Authority of the City of Fargo, North Dakota v. Jacque Stockman* # 51008 a matter heard before this Court, the Court allowed a total of 172.7 hours as attorney fees. The case involved the evaluation of 8 parcels of land and the services of two experts. Therefore, the Court will allow one hundred and fifty hours at $65.00 per hour, which the Court deems to be a reasonable fee for a total fee in the amount of $9,750.00."

 Justice Sand, writing the majority opinion in *City of Bismarck v. Thom,* 261 N.W.2d 640 (N.D.1977), explains those factors which a trial court should take into consideration in assessing reasonable attorney's fees under Section 32–15–32, N.D. C.C.:

"It is the reasonableness of the fee, and not the arrangement the attorney and his client may have agreed upon, which is controlling whenever the fee is to be as-

sessed and included in the judgment, as is provided for in § 32–15–32, NDCC.

\* \* \* \* \* \*

"We conclude, after reviewing all of the foregoing and related cases, that in determining a reasonable fee the trial judge must first determine the number of hours expended. Whenever possible his findings should be made upon contemporaneous records, and when such records are not available, then upon reasonable reconstruction or estimates of time amounts. The trial judge must then assign specific hourly rates based upon the attorney's experience and reputation which will constitute the 'lodestar.' The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney.

"The trial court or judge should also consider the character of the services rendered, the results which the attorney obtained, and the customary fee charged in the locality for such services, as well as the ability and skill of the attorney. The court should not rely on any single item in determining reasonable attorney fees. The number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees.

"We recognize that it is virtually impossible to set out every conceivable item that should be considered, and for this reason we do not attempt to do so. However, if the trial judge finds justification or reason to include something else of significance he should state those reasons and justifications for the inclusion in his ultimate determination." 261 N.W.2d at 645–46.

On appeal, we will not reverse a trial court's determination regarding the assessment of attorney's fees under Section 32–15–32, N.D.C.C., unless the trial court has abused its discretion, and the burden is upon the landowner to demonstrate that the trial court did abuse its discretion in that regard. *United Power Association v.*

*Faber,* 277 N.W.2d 287 (N.D.1979). Having reviewed the record, we are not convinced that the district court abused its discretion in its award of attorney's fees to the Arnesons for legal services provided in this case.

The Arnesons also assert that the district court abused its discretion in awarding to the Arnesons an unreasonably small amount of expert witness fees for the services provided by Gene Hetler who testified on behalf of the Arnesons as an expert in real estate appraisal. The Arnesons submitted an itemization of the services provided by Hetler showing 127 hours of work on the case plus three days of availability for providing court testimony with a total dollar request of $9,420.00. The court awarded the Arnesons $1,500.00 for services provided by Hetler and in so doing provided only the following explanation in its memorandum opinion, dated March 30, 1982:

"The Court further finds the fee of the appraiser to be in excess and allows $1,500.00."

A determination as to the amount of expert witness fees, if any, to be awarded to a landowner under Section 32–15–32, N.D.C.C., is left to the discretion of the trial court and will not be set aside on appeal unless the court abuses its discretion. *City of Bismarck v. Thom,* 261 N.W.2d 640 (N.D.1977). If, however, the trial court fails to provide any specific findings or rationale upon which its determination is made, it is impossible for this Court on appeal to appropriately review the trial court's determination. Although Hetler provided considerable testimony as an expert witness on behalf of the Arnesons, the district court assessed expert witness fees against the Defendants for Hetler's services in an amount substantially less than the itemization of those services would, on its face, support. Although an award of expert witness fees under Section 32–15–32, N.D.C.C., does not constitute an abuse of discretion merely because it is for a sum substantially less than requested, we conclude that the district court abused its discretion in this case when it awarded a substantially reduced amount of expert witness

fees from those requested *without providing any explanation or rationale for doing so*. It is necessary, therefore, to remand on the issue of expert witness fees for the district court to make a redetermination which is based upon an expressed rationale.

In accordance with this opinion, the judgment of the district court is affirmed on all matters except the determination of expert witness fees as to which the judgment is reversed and remanded for a redetermination.

VANDE WALLE, SAND and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

When this case was here before, the trial court had ordered summary judgment dismissing Arneson's claim for failure to institute the action within the time permitted by the Political Subdivision Tort Liability Act, Chapter 295, S.L.1975. We reversed and remanded "for trial" because the complaint stated a cause of action based upon inverse condemnation. *Arneson v. City of Fargo*, 303 N.W.2d 515 (N.D.1981). We stated that Chapter 295, S.L.1975, does not apply to inverse condemnation actions.

The "trial" of an inverse condemnation case is a two-step process. The preliminary determination is made by the court, not as a matter of summary judgment but based upon the facts. See *Guerard v. State*, 220 N.W.2d 525 (N.D.1974). The court must determine whether or not there has been a "taking or damaging" within the scope of Article I, Section 16 of the North Dakota Constitution. Only if the court has determined that there has been a "taking or damaging" is there any question to be determined by a jury. *United Power Ass'n v. Heley*, 277 N.W.2d 262 (N.D.1979).

There may be many benefits in the trial court when this two-step process is commingled but from an appellate, hindsight perspective, I see nothing but advantage to bifurcation. Here, where there appears to be two separate actions by Fargo alleged to constitute a "taking or damaging," the trial court should have separately heard evidence as to whether or not (1) the dumping of Sheyenne River water on Arneson's land in 1976 and 1977 was a permanent "taking or damaging" and (2) the retarding of surface water runoff by blocking Drain 27 was a permanent "taking or damaging." There also should have been separate verdicts. Confusion is a logical consequence of commingling. Is this case to be read as approving some kind of switch from *Guerard?* Is a determination of "taking or damaging" now to be a jury question? I presume that it is not.

Under the law announced by the majority opinion, even if there were a total reversal and remand the trial court would obviously determine, on the basis of the record made so far, that there was no permanent "taking or damaging" of the Arneson land by dumping of Sheyenne River water in 1976–1977. It may or may not, however, determine that there was a permanent "taking or damaging" by the retarding of surface water runoff. If the court determined that it was a permanent "taking or damaging," there would be a more limited jury trial, and it would be preposterous to think that the verdict would anywhere approach $140,000.

I agree with one part of the opinion authored by Chief Justice Erickstad. If you waive temporary (crop-loss) damage and claim only permanent "taking or damaging," you must prove permanent (frequent inevitable reoccurrences) damage. The opinion, however, as it now stands will surely open the floodgates to litigation.

I do not agree that either permanent or temporary "taking or damaging" can be based upon the blocking of Drain 27. The control of surface water runoff through an artificially constructed legal drain has to be left in the hands of the drainage authorities. Disagreeing with a water facility management decision should not open the door to an inverse condemnation action. If surface water is never permitted to escape from a tract of land except through natural contours of the land, no one is liable for any damage that might be suffered. In my view, because Arneson helped pay for Drain

27, perhaps he is entitled to an order requiring it to be managed so that it drains surface waters from his land or to a refund of his contribution toward its construction.

The judgment should be reversed and the case dismissed or remanded for a trial court determination of whether or not the plug in Drain 27 constitutes a "taking or damaging." Only if the trial judge finds that there was a "taking or damaging" would a very limited jury trial be warranted.

I do not agree that costs, including expert witness fees, must be substantiated by the court. That places the burden on the wrong party, contrary to the abuse of discretion standard. See *Peterson v. Hart,* 278 N.W.2d 133 (N.D.1979).